### PICKENS v. SOUTH CAROLINA AND GEORGIA R. R. CO.

1. TORT—REMEDIES—RAILROADS.—An action by a passenger against a railroad company for failure to carry her to her destination by reason of its negligence, is an action on tort and not one on contract.

2. DAMAGES—NEGLIGENCE—RAILROADS.—EVIDENCE as to damages resulting from exposure to a storm to which a passenger was subjected by failure of railroad to carry her to her contract destination, is not too remote in action against it for such negligence. *Mr. Justice Jones dissents.*

3. IBID.—EVIDENCE.—In an action for exemplary damages for intentional wrong, any testimony having even a remote causal connection between the wrongful act and the injury is competent.

4. TORTS.—General principles relating to torts stated. *Quinn* v. *R. R.*, 29 S. C., 381, *partly overruled.*

5. NEGLIGENCE—PRESUMPTION—JURY AND JURY TRIALS.—In action against a railroad for wilful negligence in failing to return a pas-

senger on a round trip ticket, the jury may infer wilfulness from the fact that the railroad knew at time it sold the ticket that it could not return the passenger. *Mr. Justice Jones dissents.*

6. DAMAGES—EVIDENCE.—In actions for exemplary damages, all testimony tending to show the information of defendant at time of act, is competent.

7. CHARGE—HARMLESS ERROR.—Misstatement in charge of issues raised by the pleadings is harmless error.

8. NEGLIGENCE—CHARGE—JURIES AND JURY TRIALS.—When more than one inference may be drawn from testimony as to negligence, the question must go to the jury, and Judge cannot charge that certain facts constitute negligence.

9. NEGLIGENCE—DAMAGES.—CHARGE upon negligence and damages excepted to, not objectionable.

Before WATTS, J., Aiken, February, 1898.    Reversed.

Action by Lucy H. Pickens against South Carolina and Georgia Railroad Company. From judgment and verdict for plaintiff, defendant appeals.

*Messrs. Joseph H. Barnwell* and *Henderson Bros.*, for appellant. The latter cite: *As to measure of damages:* 51 S. C., 484; 50 Pac. R., 438; 70 Mo., 288; 116 Pa. St., 344; 139 Pa. St., 363; 54 Mich., 55; 19 N. W. R., 747; 25 S. C., 70: Dud., 180; 9 Exch., 341; 53 S. C., 412; 52 S. C., 323; 1 Strob., 525; 7 Wall., 52; 133 Mass., 15; 85 Pa. St., 293; 113 N. C., 49; 25 Am. St. R., 542; 52 N. H., 552; 65 Me., 449; 95 U. S., 117; 33 Md., 542; 78 Cal., 517. *Charge that certain facts constitute negligence is error:* 51 S. C., 460; 53 S. C., 448. *No damages for worry or mental excitement:* 41 Am. R., 308; 5 A. & E. R. R. Cases, 245.

*Messrs. G. W. Croft & Son* and *J. W. DeVore,* contra. The former cite: 10 O. B., 111, and 4 Col., 344, *are not good authority and are criticised* in 44 L. T. N. S., 175, and L. R., 1 Ex., 177. *As to rule of damages:* 54 Wis., 41; 60 N. Y., 252; 118 Mass., 251; 111 Ib., 136; 44 Vt., 268; 66 Me., 239; 7 H. & N., 79; 13 Mich., 99; 104 Mass., 64; 109 Ib., 277; 106 Ib., 458; 98 Mass., 414; 26 Wis., 223; 32 Ib., 524; 28 N. Y., 217; 34 How. Pr., 144; 2 Sawry, 21; 94 U.

S., 475; 48 Am. R., 179. *Negligence defined:* 15 S. C., 450; 40 Me., 103. *Exemplary damages may be recovered in all cases where wrong is wilfully inflicted:* 35 S. C., 475; 34 S. C., 324; 52 S. C., 344. *Judge only stated to jury what law was applicable to such facts if found, which was proper:* 52 S. C., 24, 311; 38 S. C., 31; 47 S. C., 518. *Violation of a statutory duty is negligence, per se:* 106 Mass., 458; 45 Mich., 65; 18 A. R., 22; 31 Ia., 146; 34 Ia., 276; 62 Md., 504; 90 Mo., 314; 105 Mo., 537; 7 L. R. A., 19; 51 A. R., 761; 58 Fed. R., 152; 53 Am. R., 47. *Damages claimed not too remote:* 28 N. Y., 217; 96 N. Y., 264; 62 Tex., 380.

The latter cites: *On charge as to negligence:* 51 S. C., 296; 14 S. E. R., 650; 15 S. E. R., 81. *Measure of damages laid down in charge not too remote:* 32 Penn. R., 147; 28 N. Y., 217; 3 S. C., 599; 1 Strob., 544; 5 Nend. R., 538.

March 25, 1899. The opinion of the Court was delivered by

MR. JUSTICE GARY. The complaint sets forth two causes of action, the first of which is as follows: I. The first paragraph alleges the corporate existence of the defendant. "II. That at the said times, the defendant was operating in connection with its railroad, the Carolina, Cumberland Gap and Chicago Railroad, the same being a line of railway running from the city of Aiken, in this State, to the town of Edgefield, also in this State, and then owned by the Carolina, Cumberland Gap and Chicago Railway Company, which was also a corporation created by and under the laws of this State. III. That on or about the 31st day of March, 1896, the plaintiff, for a valuable consideration, purchased of the defendant company at the depot of the Carolina, Cumberland Gap and Chicago Railway, at the town of Edgefield, a round trip ticket, which entitled the plaintiff to passage from the town of Edgefield over the railway of the said Carolina, Cumberland Gap and Chicago Railway Company, via the

said city of Aiken, thence over the railway of the defendant
company to the city of Augusta, in the State of Georgia,
which said ticket was limited to a period of ten days from
the date of issuance.   And that the plaintiff did accordingly,
on or about the      ˙ day of March, 1896, board a passen-
ger car of defendant at Edgefield, and in due course of travel
was carried by virtue of said ticket to the said city of
Augusta; and after remaining in said city several days, the
plaintiff did, on or about the      day of April, 1896, and
within the period limited by said ticket, board the train of
the defendant company, for the purpose of returning to the
town of Edgefield upon said ticket, as was provided by the
terms of the contract thereon  stated; but that when the
plaintiff reached the city of Aiken on the said return trip,
the defendant, in disregard of its said contract as contained
upon said ticket, and of the rights of the plaintiff, negli-
gently failed to carry or to provide for the carriage of the
. plaintiff from said city of Aiken to the said town of Edge-
field, and left her in said city of Aiken.   And the plaintiff
further alleges that by reason of the failure of the defend-
ant to carry her back to said town of Edgefield, she was ex-
posed to a severe storm of sand, wind and rain, which
brought on her a severe attack of sickness, and caused her
to be confined to her bed and house for upwards of two
months, and caused her severe pains and suffering, and has
thereby caused her health to be permanently impaired, so
that she is not as strong and healthy as she was before being
exposed to said storm, through the negligence of the defend-
ant in not providing her with passage back to the town of
Edgefield, as aforesaid, to the injury and damage of the
plaintiff in the sum of $2,000." The second cause of action
is similar in its allegations to the first, except it alleges that
the defendant's wrongful act was wilful, grossly negligent,
and in wanton and reckless disregard of the plaintiff's rights,
and that she was damaged in the sum of $5,000.

The jury rendered a verdict in favor of the plaintiff for
$3,000, and the defendant appealed upon exceptions, the first

of which is as follows: "I. That his Honor, Judge Watts, the presiding Judge, erred in permitting the plaintiff, as a witness upon the stand, against the objection of the defendant, to testify that she was caught in a storm of sand and rain after she left the depot of the defendant company at Aiken, and to testify that she received injuries from said storm. For the reason, it is submitted, that this action is for a breach of contract and not a tort, and such damages are too remote, and would not enter into the proper measure of damages for the causes of action set forth in the complaint." The first question raised by this exception is whether the action is for a breach of contract or a tort. The allegations of the first cause of action are appropriate to an action of tort arising from negligence, and the second cause of action is found upon a tort growing out of alleged wilfulness or intentional wrong. The cases of *Head* v. *R. R. Co.*, 7 S. E. R. (Ga.), 217; *Purcell* v. R. R. *Co.*, 12 L. R. A. (N. C.), 113, and *Hansley* v. *R. R. Co.*, 32 L. R. A. (N. C.), 543, as well as many others that could be cited, show that an action of tort can be brought for such alleged violation of duty; and the case of *Hammond* v. *R. R. Co.*, 6 S. C., 130, which was an action by a passenger to recover damages for injury caused by defendant's negligence, shows that the recital of the contract was not for the purpose of "founding a right to a recovery for the breach of the contract." The Court further says: "It was not referred to as the foundation of his action. It may be that his complaint would not have been open to any exception, if he had omitted all reference to it. It was introduced to show that he was not an intruder on the train of the company. It was merely preliminary to the statement of his real cause of action, and if necessary to its support, he could have offered proof of it without setting it out in his complaint." Parenthetically, we may remark that the cases of *Purcell* v. *R. R. Co.* and *Hansley* v. *R. R. Co., supra,* are in seeming conflict; but when carefully considered it will be seen that the Court reached the correct conclusion in each of

them.   In the case of *Purcell* v. *R. R. Co.,* the intentional
wrong of the defendant was the direct cause of the injury,
while in the case of *Hansley* v. *R. R. Co.,* an efficient cause
intervened, to wit: the breaking of the axle, which was not
intentional.

The second question raised by this exception is whether
the testimony therein mentioned should have been excluded,
on the ground that it tended to prove damages that were too
remote.   The subject of proximate and remote damages has
been prolific of discussion by text-writers and judges.   It
has frequently been before this Court for considera-
tion, and it has been found difficult to formulate a
general rule by which each case could be determined.
In the case of *Harrison* v. *Berkley,* 1 Strob., 525, which was
an action for damages against a shopkeeper, who sold liquor
to a slave in violation of the statute, in consequence of which
he became intoxicated and died from exposure, the rule is
thus stated: "Only the proximate consequences shall be an-
swered for (2 Greenleaf Ev., 210, and cases there cited).
The difficulty is to determine what shall come within that
designation.   The next consequence only is not meant,
whether we intend thereby the direct and immediate result
of the injurious act, or the first consequence of that result.
What either of these would be pronounced to be, would often
depend upon the power of the microscope with which we
should regard the affair.   Various cases show that in search
of the proximate consequences, the claim has been followed
for a considerable distance, but not without limit, or to a
remote point (8 Taun., 535, Peak's Cases, 205).   Such
nearness in the order of events, and closeness in the relation
of cause and effect, must subsist, that the influence of the
injurious act may predominate over that of other causes, and
shall concur to produce the consequence, or may be traced in
those causes.   To a sound judgment must be left each par-
ticular case.   The connection is usually enfeebled, and the
influence of the injurious act controlled, where the wrong-
ful act of a third person intervenes, and where any new

agent, introduced by accident or design, becomes more pow-
erful in producing the consequences than the first injurious
act (8 East., 1; 1 Esp., 48). It is, therefore, required that
the consequences to be answered for should be natural as
well as proximate (7 Bing., 211; 5 B. & Ad., 645). By
this I understand, not that they should be such as upon a
calculation of chances would be found likely to occur, nor
such as extreme prudence might anticipate, but only that
they should be such as have actually ensued one from an-
other, without the occurrence of any such extraordinary
conjuncture of circumstances, or the intervention of any
such extraordinary result, as that the usual course of nature
should seem to have been departed from. In requiring con-
curring consequences that they should be proximate and
natural to constitute legal damage, it seems that in propor-
tion as one quality is strong, may the other be dispensed
with; that which is immediate, cannot be considered unnat-
ural; that which is reasonably to be expected, will be
regarded, although it may be considerably removed (20
Wend., 223)." Leaving the depot was the natural conse-
quence of the defendant's failure to provide transportation
for the plaintiff from Aiken to Edgefield; and in view of
the frequency and suddenness with which storms arise in
this country, it cannot be said that the injury from the storm
was "the intervention of any such extraordinary result, as
that the usual course of nature should seem to have been de-
parted from;" at least, this was a question to be determined
by the jury. More than one inference could have been
drawn from the testimony, and when this is the case, it is
always a matter for the consideration of the jury. This
exception is overruled.

The second exception is as follows: "2. That his Honor
erred in permitting the plaintiff, whilst a witness on the
stand, against the objection of the defendant, to testify that
she was annoyed by the depot not having fire therein, and
by the rude talking and singing and dancing and
rude conduct generally of some negroes at and about

the depot, for the reason that there were no allegations in the complaint to which said testimony was responsive; the complaint simply alleging negligence in the failure to carry, and not negligence of any other kind, nor general negligence." While there are no allegations in the complaint that the plaintiff suffered injury as the result of the defendant's failure to provide suitable accommodations at the depot in Aiken,.the testimony was, nevertheless, competent as explanatory of the reasons that induced the plaintiff to leave the depot, thus tending to throw some light upon the causal connection between the alleged wrongful act of the defendant and the injury resulting therefrom. Furthermore, the second cause of action alleged that the defendant's wrongful act was *wilful*. In 16 A. & E. Enc. of Law, 392 and 395, it is said: "The element which distinguishes actionable negligence from criminal wrong or wilful tort, is inadvertence on the part of the person causing the injury. He may advert to the act of omission of which he is guilty, but he cannot advert to it as a failure of duty—that is, he cannot be conscious that it is a want of ordinary care—without subjecting himself to the charge of having inflicted a wilful injury, because one, who is consciously guilty of a want of ordinary care, is, by implication of law, chargeable with an intent to injure, malice being but the 'wilful doing of a wrongful act' * * * Negligence and wilfulness are the opposites of each other. They indicate radically different mental states. The distinction between negligence and wilful tort is important to be observed, not only in order to avoid a confusion of principles, but it is necessary in determining the question of damages, since in case of an injury by the former, damages can only be compensatory; while in the latter, they may also be punitory, vindictive or exemplary." The complaint alleged intentional wrong, and the plaintiff had the right to introduce testimony having only a remote causal connection between the alleged wrongful act and the injury resulting therefrom, in order that the jury might have all the facts

and circumstances before them, in estimating the exemplary damages. This exception is overruled.

The third exception is as follows: "3. That his Honor, the presiding Judge, erred in refusing to grant the nonsuit moved for on the part of the defendant at the close of the plaintiff's testimony, for the reason, it is submitted, that there was not a particle of testimony to support said second cause of action, no testimony having been introduced to show that the alleged failure of the defendant to provide transportation for Mrs. Pickens to Edgefield was on account of gross negligence, wilfulness, malice or wantonness." Before referring to the testimony, we will state some general principles relating to the subject of torts: In 16 A. & E. Enc. of Law, 389, actionable negligence is defined as "the inadvertent failure of a legally responsible person to use ordinary care under the circumstances in observing or performing a non-contractual duty implied by law, which failure is the proximate cause of injury to a person to whom the duty is due." 2. Ordinarily, it is a question to be determined by the jury, whether the injury was caused proximately or remotely by the defendant's wrongful act; and this is the rule in all cases when the facts are susceptible of more than one inference. 3. In actions of tort founded simply upon negligence, the injury must be the natural and proximate result of the defendant's wrongful act. The rule is practically the same in actions for damages arising from a breach of contract. 4. In an action for a wilful tort, the jury has the right to take into consideration two elements of damages: 1st, compensation for the injury sustained, as to which the plaintiff is confined to a recovery of such damages as flow naturally and proximately from the wrongful act; and 2d, the conduct of the defendant, for which the plaintiff is entitled to recover exemplary damages, sometimes called punitive or vindictive damages. The exemplary damages are in addition to the compensatory damages. *Duckett* v. *Pool,* 34 S. C., 311. There are cases which decide that when the wrongful act

was wilful, the plaintiff can recover for consequences of which the original wrongful act of the defendant was only a remote cause, but this is not sound in principle. The correct rule is that when the plaintiff is entitled to damages arising from defendant's intentional wrong, the jury has the right to take into consideration those causes even remotely contributing to the injury, not for the purpose of giving damages for the injury thus caused, but that they may have in view all the facts and circumstances of the case in awarding the exemplary damages. 5. Wilfulness is the foundation of a recovery for exemplary damages, and such damages are not recoverable unless the wrongful act was wilful or intentional. *Hansley* v. *R. R. Co., supra.* We are aware that there are expressions in the case of *Quinn* v. *R. R. Co.,* 29 S. C., 381, which are not in accord with this last proposition. That case, however, as to this question, is not sound in principle. Both the cases upon which it rests are in harmony with the foregoing proposition. We will now refer to the facts. It seems to be an undisputed fact that when the defendant sold the ticket, it knew that it would cease to operate the leased road before the time within which the plaintiff had the right to return upon the ticket would expire; and from this fact the jury might have inferred wilfulness on the part of the defendant, in failing to provide some suitable transportation for the plaintiff, even if they had been satisfied that the failure to operate the leased road was not wilful. The presiding Judge, therefore, properly refused the motion for a nonsuit.

The fourth exception is as follows: "4. That his Honor, the presiding Judge, erred, it is submitted, in excluding, upon the objection of plaintiff's counsel, the testimony of Edwin Parsons and Wilbur Herbert, taken in New York and presented to the Court, they being witnesses on the part of defendant, for the reason, it is submitted, that said testimony was responsive to the issues raised in the case, and especially to the issues raised in the

second cause of action set up in the plaintiff's complaint, and denied by the defendant in its answer, that the failure to provide transportation and to carry Mrs. Pickens from Aiken to Edgefield was because of gross negligence and wilful and wanton action of the defendant company." This testimony is not set out in the "Case," but the statements therein contained show that it was directly responsive to the issue as to the alleged intentional wrong on the part of the defendant, which constituted at least part of the damages for which the jury rendered a verdict. It seems that the time fixed for the expiration of the lease had been agreed upon even before the plaintiff bought her ticket, and that at the time of the alleged injury, the defendant was not operating the leased road. While the jury might have inferred wilfulness from other facts, still it was pertinent to the issue as to wilfulness, for the defendant to show that the failure to operate the leased road, at the time of the alleged injury, was not a wilful disregard of its duty as a common carrier, and that it was not in its power, at that time, to operate the said road. This exception is sustained.

The fifth exception is as follows: "5. That his Honor, the presiding Judge, erred, it is submitted, in stating the allegations of the complaint, when he charged the jury as follows: 'She further alleges that she boarded the train and went to Augusta, and within ten days time she took the train to return from Augusta to Edgefield via Aiken, and when she got to Aiken the railroad negligently refused to furnish her transportation.' And in further charging the jury that 'she alleged in the complaint that she was forced to hunt lodging in the town of Aiken, and by the negligence of the railroad company she was forced to do this, and while hunting lodging she was caught in a sand storm.' Whereas, it is submitted that the complaint did not allege that the defendant company refused to furnish Mrs. Pickens transportation, but that they simply failed to furnish transportation; and whereas, it is nowhere alleged in the complaint that Mrs. Pickens was forced by the negli-

gence of the railroad company 'to hunt lodgings' in Aiken, the complaint saying no such thing, and this charge of the Judge, especially when taken in connection with his charge on the facts, tended to mislead the jury." The expressions in this exception were used by the presiding Judge in his preliminary statement of the issues made by the pleadings, and any mistake in stating them could easily have been corrected if the matter had been called to his attention. Even if there was error, it was harmless, and this exception is overruled.

The sixth exception is as follows: "6. That his Honor, the presiding Judge, it is submitted, erred in charging the jury as follows: '1 charge you, as matter of law, that if you find from the evidence in this case that Mrs. Pickens got on the train in Augusta in ten days time and got to Aiken, and the railroad did not furnish her with any transportation from Aiken to Edgefield, then it is guilty of negligence, and she will be entitled to recover at your hands whatsoever she has sustained by the negligence of the railroad company,' for the reason, it is submitted, that the Judge therein invaded the province of the jury granted to it under the Constitution, when he said what facts, or series of facts, would amount to negligence." Negligence is ordinarily a mixed question of law and fact. The Court should instruct the jury as to the principles of law governing in such cases, and the jury should determine whether, in applying the law to the facts of the particular case, they constitute negligence. *Samuels* v. *R. R. Co.,* 35 S. C., 493; *Bridger* v. *R. R. Co.,* 25 S. C., 30. Whenever the facts introduced in evidence for the purpose of proving negligence are susceptible of more than one inference, it must be determined by the jury, and in this case they were susceptible of more than one inference. It was error to charge that certain facts constituted negligence, when there were other facts brought out in evidence relative to this question. As this case must be remanded for new trial, it is deemed best not to discuss the facts in this respect, as it might tend to prejudice the

rights of one or the other parties to the action.    This exception is sustained.

The seventh exception is as follows: "7. It is submitted that his Honor erred in charging the jury as follows: 'In other words, if the testimony satisfies you that the plaintiff arrived here in Aiken, and there was no way to carry her from Aiken to Edgefield, and she was forced to leave the depot and hunt lodging, and if in leaving the depot she was exposed to the inclemency of the weather, and by reason of that exposure sickness was brought on, and she suffered and was sick, and her health was impaired, then I charge you, as matter of law, if you believe that if it had not been for the negligence of the railroad in not providing her with transportation to Edgefield, which forced her to leave the depot to hunt lodging, and exposed her to the inclemency of the weather, then, I charge you, as matter of law, that she is entitled to whatever damages she has sustained by reason of that sickness, if you find that the railroad was the prime cause of that, the negligence of the railroad company.   In other words, if you believe from the testimony that Mrs. Pickens arrived at Aiken, and if the South Carolina and Georgia Railroad Company had had cars to carry her on to Edgefield, and she could have remained at the depot till she got on the train, and would not have been exposed to that storm, but would have been in the depot or the train, not forced to leave the station or depot, and by reason of not having the train there she did go out, and was exposed and got sick, then I charge that the railroad company would be liable for damages, if it was the negligence of the railroad company that forced her to leave the depot and get in this storm; and she would be entitled to damages whatever she had sustained by reason of this negligence.' For, it is submitted, that his Honor invaded the province of the jury in this charge in several particulars: In that he gave them practically his opinion, that she was forced to leave the depot and hunt lodging, by the railroad not having a train to take her away; and in that he especially told them,

in effect, that there was a storm, when one of the material questions of the case, and one disputed by the defendant, was that there was no storm. And, further, that he erred in laying down the measure of damages in this case, 'that Mrs. Pickens could recover damages for any injury which she received from any storm which may have existed.' " When the language of the presiding Judge in this exception is considered in connection with the entire charge, it will be seen that he did not invade the province of the jury in the particulars therein mentioned, and this exception is overruled.

The eighth exception is as follows: "8. It is submitted that his Honor erred in charging the jury as follows: 'I charge you further, that if the railroad company was negligent in furnishing her transportation, and she was forced to hunt quarters, and in hunting quarters she encountered a storm, as alleged in the complaint, and that brought about sickness, she would be entitled to recover whatever damages, in your opinion, she would be entitled to;' for that, it is submitted, there is no allegation in the complaint that the plaintiff was forced to hunt quarters, or that she attempted in any way to hunt quarters; and it is further submitted that this measure of damage laid down by his Honor was too remote upon the cause of action set forth in the complaint." Standing alone, the part of the charge contained in this exception would be erroneous, as it does not state that the injury must be the natural and proximate result of the defendant's wrong; but when this part of the charge is considered in connection with the whole charge, it will be seen that the presiding Judge impressed upon the jury these requirements of the law. This exception is overruled.

The ninth exception is as follows: "9. It is submitted that his Honor erred in refusing to charge and in not charging the defendant's first request to charge, as follows: First. 'As to the compensatory damages claimed by the plaintiff under the first cause of action set forth in the complaint in this action, the jury is charged that said cause of

action, as set forth in the complaint, complains of a breach
of contract for not carrying Mrs. Pickens from Aiken to
Edgefield, as it is claimed the defendant had undertaken to
do, and that no complaint is made as upon a tort.   In such
action for breach of contract, the measure of damages is:
"That only such damages should be given as were fairly
within the contemplation of the parties, as the possible re-
sult of the breach of contract at the time it was made, or
such as might reasonably be expected to arise naturally and
directly therefrom."   In such cases damages can only be
recovered as are produced directly by the act of the defend-
ant, and no damages can be recovered that are produced by
a remote cause.   If there was a breach of contract on the
part of the defendant, and Mrs. Pickens suffered any dam-
ages caused directly thereby, for such she can recover; but
if she has suffered injury from any intermediate efficient
cause other than being left at Aiken, she cannot recover
damages therefor; and the jury is charged that if she has
suffered injury because of a storm in which she was caught,
away from the depot, that such is not a direct cause, but a
remote cause, and she cannot recover damages therefor or
flowing therefrom.'   Whereas, it is submitted that said first
request so refused is in accordance with law and the prin-
ciples thereof applicable to this case."   It has been shown
that the first and second causes of action are both founded
upon tort and not upon a breach of contract.   The presiding
Judge could not have charged that if the plaintiff suffered
injury because of a storm in which she was caught, that
such is not a direct cause, without invading the province of
the jury.   This question is disposed of by what was said in
considering the other exceptions.   This exception is over-
ruled.

The tenth exception is as follows: "10. That his Honor
erred, it is submitted, in refusing to charge the defendant's
second request as follows: 'Second: As to the damages
claimed under the first cause of action, which is for a breach
of contract, the jury is further charged that in this case it is

not claimed in the pleadings that any personal injury was inflicted on the person of the plaintiff by the defendant company, and such being the case, she cannot recover any damages for worry and mental excitement, and for inconvenience and annoyance, such as are felt at every disappointment of one's expectations, nor for pain of mind; because the law is that no such elements of damage can be taken in consideraction unless there be physical injury.' Whereas, it is submitted that the said second request so refused is in accordance with law, and the principles thereof applicable to this case." Unless all the propositions of law embodied in a request to charge are correct, the presiding Judge does not commit error of law in refusing to charge as therein requested. As the first cause of action was not for a breach of contract, the presiding Judge did not err in refusing the request to charge, and this exception is overruled.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed, and the case remanded to that Court for a new trial.

MR. CHIEF JUSTICE MCIVER *concurs.*

MR. JUSTICE POPE *concurs in the result.*

MR. JUSTICE JONES: I concur in the result. I do not think there was a particle of evidence to sustain the second cause of action, and the motion for nonsuit as to that cause of action should have been granted. Moreover, I am satisfied that injury resulting from a storm which suddenly arose after plaintiff voluntarily left the depot, is too remote from the alleged negligence of the defendant, which was failure to provide transportation. Such injury is the result of an efficient intervening cause, and is not the natural and proximate result of the alleged negligence, any more than if some one had robbed or injured her on her way from the depot.