## CARTER v. SOUTHERN RY.

RAILROADS—PASSENGER—DAMAGES.—It is the duty of a passenger who has been inadvertently informed by the ticket agent that a through train stopped at a small station to which he sold her a ticket, to use all reasonable means known to her or suggested by the conductor to minimize her damages; she should have gotten off at station preceding her destination and taken the local train following in a few hours which would stop at her destination, and she cannot recover for loss or .injury caused by sickness brought on by going to the station next beyond her destination and walking back nine miles through heat and rain over a rough mountain trail, the only reason urged for stopping at her destination being that she had written her friends before purchasing her ticket or inquiring what train stopped at her destination, to meet her there with conveyance to carry her several miles from station. *Pickens* v. *R. R. Co.,* 54 S. C., 511; *Richardson* v. *R. R. Co.,* 71 S. C., 445, and *Samuels* v. *R. R. Co.,* 35 S. C., 493, *distinguished from this case.*

Before KLUGH, J., Union, September, 1905. Reversed.

Action by Mamie Isabel Carter against Southern Railway Co. From judgment for plaintiff, defendant appeals.

*Messrs. Sanders & DePass,* for appellant, cite: *Ticket may or may not be contract between passenger and carrier:* 6 Cyc., 570, 585; 4 Elliott on R. R., par. 1593; Hutch. on Car., pars. 580, 580g; Ray's Neg. of Imposed Duties, par. 56; 1 Fetter on Car. of Pass., 766. *Passenger on wrong train must change cars:* 9 Mack., 63; 6 Duer., 523; 3 Thomp. on Neg., pars. 2563-4; 24 N. Y., 599. *Conductor has no authority to disarrange schedule:* 65 Am. St. R., 35. *Nor is he bound by special contract of ticket agent unless notified:* 4 Elliott on R. R., par. 1494; 9 Am. & Eng. R. R. Cas., 314; Fetter on Car. Pass., 770; 6 Cyc., 581. *Passenger's sickness was caused by her voluntary act:* 53 S. C., 412; 51 S. C., 484; 44 Am. St. R., 474. *Liability for failure to let passenger off is actual damages:* 71 Ill., 391: 8 A. & E. R. R. Cas., 374. *Passenger should have done what she could to lessen damages:* 2 Sher. & Red. on Neg., par. 741: 6 Thomp. on Neg., par. 7259.

*Mr. V. E. DePass,* contra, submits that this case is governed by *Pickens* v. *R. R. Co.,* 54 S. C.

October 31st, 1906. The opinion of the Court was delivered by

MR. JUSTICE WOODS. The plaintiff, Mrs. Carter, recovered a judgment of $800 against the defendant, Southern Railway Company, for injuries which she alleges resulted from defendant refusing to stop its train and put her off at Zirconia, N. C., to which point she held a ticket, purchased at Union, S. C., where she had taken the train. The defendant's appeal raises interesting questions as to the rights of a passenger holding a ticket to a station at which the train he is on does not stop.

The defendant had two daily trains passing Union, S. C., and Zirconia, N. C., known as number nine and number fourteen, the first leaving Union at 9 o'clock A. M., and the second about 2 o'clock P. M. Number fourteen was a local train scheduled to stop at Zirconia; number nine was scheduled to stop at the more important stations, not including Zirconia. These trains, it will be convenient to designate the local train and the through train. Accompanied by her husband, the plaintiff, on July the 31st, 1904, boarded number nine, the through train, with a ticket to Zirconia. As she and her husband testify, he bought her ticket and his own ten or fifteen minutes before the arrival of the train, the ticket agent telling them they would reach Zirconia about 12 o'clock. This statement, if made by the agent, could only refer to the through train, as the local train did not leave Union until about 2 o'clock. The conductor told the plaintiff he could not stop his train at Zirconia, and suggested to her and her husband that they should get off at Saluda, the next stop before reaching Zirconia, and wait there for the local train or go on to Flat Rock, the next stop beyond. The plaintiff refused to get off at Saluda and insisted on being put off at Zirconia, because she had written to her friends to meet her there and take her a short distance in the country to her father's home, which was her ultimate destination. The train did not stop at Zirconia, and the plaintiff, in company with her husband, got off at Flat Rock, from which point she walked two miles to the residence of her sister, intending to spend the night there and walk to her destination the next day, a distance of about nine miles. Not finding her sister at home, she and her husband continued their journey on foot the entire distance over a rough mountain road or trail. The plaintiff and her husband testify that from this journey on a hot day, in the rain, she suffered much hardship, resulting in sickness from which at the time of the trial she had not recovered; and it was for this suffering and sickness that the plaintiff demanded and recovered against the defendant damages as the proximate result of its refusal to stop its

train at Zirconia. In demanding to be put off at Zirconia and refusing to get off at Saluda and wait for the next train which arrived at Zirconia late the same afternoon, the plaintiff, as she testified, had in view the fact that in going on to Flat Rock she would have to walk back nine miles; and she so informed the conductor.

The testimony of the conductor differed little from that of the plaintiff, except that he testified that before reaching Spartanburg he suggested to her that city as a convenient place to wait for the next train, while this was denied by the plaintiff. The plaintiff testified that she absolutely refused to consider the conductor's suggestion to get off at Saluda, and that he did not offer her transportation from Saluda to Zirconia on the next train; while on this point the conductor said that the plaintiff and her husband first agreed to stop at Saluda and he actually indorsed the tickets so as to give them passage on the next train, and they then changed their minds and concluded to go on to Flat Rock.

From the foregoing statement it will be seen that there is little dispute as to the material facts; and the question in the case was, whether the plaintiff having refused to get off at Saluda and take the local train, had a right to go on to Flat Rock and recover of the defendant damages for the suffering and sickness due to her long walk. In other words, was the hardship of the journey and the sickness resulting from it the natural and proximate outcome of the defendant's failure to stop its train and let the plaintiff off at Zirconia? This question is presented with great elaboration in the exceptions to the charge, covering eleven printed pages, but we think the vital point is sufficiently indicated by the tenth request to charge and the Court's modification of it. The request was: "If it appears that through a mistake or oversight, the agent sold a ticket for a train not scheduled to stop at the station she wanted to get off at, and the plaintiff got on board of such train, and while on the train was informed by the conductor before reaching such station that it did not stop there, but that there was another train following

on that day on which she could go to her station, and advised her to get off the train she was on and get on the other train, and she refused to do so, and remained on and was carried by to another station, and then got off and walked through the country and was made sick, when, if she had gotten off and taken the other train, this would not have happened; then she cannot recover any damages." The modification was: "That is subject to the same modification. In fact, it involves the same question as to the law and facts both, but it involves the same consideration that applies to the preceding request. I charge you that you must consider the circumstances in which the plaintiff was placed on this particular occasion, not only the circumstances that confronted her on the train, but the circumstances that would have confronted her if she had gotten off the train and waited for another train when it reached the station that she was going to; that is, if you find that there was an engagement by some party to meet her at that station at that particular train, and that such engagement would be broken if she got off the train and waited and got on another train that arrived at a later hour; then it is a matter for the passenger to consider which course she would adopt, and if she arrives at the conclusion which a person of ordinary prudence and reason under similar circumstances would arrive at, then she performs her duty with reference to the defendant. And any act or conduct on her part by allowing herself to be carried by the station, would not, under these circumstances, defeat her right to compensation for whatever injuries she suffered because of the failure of the railroad company to perform its duty. With that modification, I charge you that."

The request and modification are to be considered not as applied to a claim for damages for delay in carrying the plaintiff to her destination according to her ticket, for the suit is not on that ground, but for the hardship of the long walk and the sickness resulting from it.

There can be no doubt of the right of railroad companies to run passenger trains stopping only at important stations, provided reasonably adequate provision is made by other trains for the accommodation of local travel. Incident to this right of a railroad company is the duty of a passenger before boarding a train to use due diligence to ascertain if it stops at his destination, and if the passenger fails to use the means of information at his command, he cannot complain of the resulting inconvenience or damage, even if on his refusal to pay the additional fare to the next regular stopping place he is ejected from the train. *R. R. Co.* v. *Randolph,* 5 Am. Rep. 60 (Ill.); *Atchison etc. R. R. Co.* v. *Gants,* 5 Am. S. Rep., 780 (Kan.); *Dietrich* v. *R. R. Co.,* 10 Am. Rep., 715 (Penn.)

On the other hand, it is the duty of the railroad company to provide reasonable means by which the passenger may be informed as to the proper train for him to take; and the request to charge above quoted goes on the supposition that the defendant had failed to perform its duty in this respect, that the ticket agent had made a mistake, and either by words or by his action in selling the plaintiff a ticket for the train she took, represented to her that that train would stop at Zirconia. Assuming, then, that the plaintiff's being on the wrong train was due to the mistake of the railroad company and not to any fault of her own, what were the relative duties in these circumstances of the railroad company and the passenger? Ordinarily the duty of a railroad company is to stop its train to let off passengers at stations to which it has undertaken to carry them. But where, as in this case, a passenger is on a train by the mistake of a ticket agent which under the rules of the company does not stop at the station called for by his ticket, the prompt and safe transportation of other passengers is also to be considered by the conductor in deciding whether he will adhere to his schedule or stop for the particular passenger, and if in good faith he decides it to be his duty not to stop, then it is the duty of the railroad company to correct the mistake of the ticket agent as far as

practicable with the least possible damage and inconvenience to the passenger, and to compensate the passenger for such damage as resulted from the mistake as a proximate cause.

The duty of a passenger in the situation of the plaintiff is to use all reasonable means known to herself or suggested by the conductor, to minimize her damage, especially when it is conceded, as in this case, that the fault alleged against the ticket agent in misleading the passenger was due to inadvertence; and the passenger cannot recover for loss or injury which could have been avoided by the use of such means. *Willis* v. *Tel. Co.*, 69 S. C., 539, 48 S. E., 538; 2 Sherman & Redfield on Neg., par. 741. In the application of this principle of the right and duty of the carrier to correct its mistake and of the duty of the passenger to minimize the damage, as a general rule where a passenger on account of the mistake of the carrier's agent boards a train not scheduled to stop at his station, the carrier has a right to correct the mistake by letting the passenger off at a stopping place of that train before passing the passenger's destination, so that he may take the next train scheduled to stop at his destination; and it is the duty of the passenger to stop off and wait for such train. *International Railway Co.* v. *Hassell*, 50 Am. Rep., 526. In such case, however, the common carrier is, of course, liable for any damage or loss of time resulting from the passenger's stopping off which would not have been incident to waiting for the local train at the point where the passenger had to commence his journey.

It is true, this general rule as to the duty of the passenger to stop and wait for the next train is subject to exceptions, and there may be circumstances requiring the conductor of a fast train to stop and let one passenger off at an unscheduled station even at the cost of disarranging the running of his own and other trains and inconveniencing other passengers. For example, the passenger could refuse to allow the railroad company to correct its mistake by requiring him to leave the through train and wait for the local, at the cost of danger to life or limb or of physical suffering or other hardship.

Therefore, as an abstract proposition of law, it is true, as the Circuit Judge said, that the duty of a passenger to get off and wait for the next train scheduled to stop at his destination is not so absolute but that it may depend on circumstances. But in this case there were no circumstances which in any view could justify the plaintiff in refusing to wait for the local train at Saluda, and in putting upon the defendant responsibility for the injuries which came to her from her determination to go on to Flat Rock and walk nine miles over a rough trail; for there was not a scintilla of evidence that any damage or injury or hardship would have actually resulted to the plaintiff if she had gotten off at Saluda and waited for the next train, or that she had any reason to apprehend any injury or hardship from so doing. It was undisputed that the local train would be along the same afternoon and take her to her destination. There was no evidence that Saluda was not a convenient and respectable stopping place where the plaintiff might stay in safety and comfort. The local train which she would have taken from Saluda was the very train she should have been directed to take at Union, and the only train on which it was defendant's duty to carry her to Zirconia, and there is no evidence that she would have suffered any inconvenience or loss from waiting at Saluda rather than Union beyond the actual loss of time from her work as an operative in the factory. The circumstance alleged in the complaint and mentioned by the Circuit Judge as one which she had a right to consider as a reason for refusing to wait at Saluda, that she had written to friends to meet her on arrival of the through train at Zirconia, cannot have any force or even application, for the reason that the plaintiff wrote and made this appointment, as she alleged, on some day before the day of her departure from Union, and before she was misled by the agent as to the train she could take for Zirconia. There is no evidence that she had then made any effort to ascertain what trains stopped at Zirconia, and as she had no right to be carried there on the through train, she could not hold the railroad company re-

sponsible for the consequences of having written to her friends to meet her at that train.

As already remarked, the plaintiff is not suing for delay or loss of time, but specifically for the hardship of the long journey on foot from Flat Rock to her father's home near Zirconia, and the illness alleged to have resulted from the fatigue and exposure. It is to be further observed that the complaint alleges the conductor told plaintiff he would force her to go on to Flat Rock beyond her destination before he would allow her to get off. If this allegation had been made good, a very different case would have been presented, but the plaintiff's own proof was that the conductor gave her the opportunity to get off at Saluda, which was on the Union side of Zirconia, and there wait for the local train.

To sum up, in the whole case, there is nothing whatever disclosed by the evidence which could make the defendant responsible for anything more than the delay of the plaintiff in reaching her destination which would have been consequent on waiting at Saluda for the local train. It was her own choice to go on to Flat Rock and take the long walk over the mountain trail, and the resulting hardship and sickness cannot in any possible view of the evidence be regarded a natural or proximate result of the defendant's selling her a ticket on the wrong train or refusing to put her off at Zirconia. On this point the facts are not susceptible of any other inference.

The vital difference between this case and the case of *Pickens* v. *R. R. Co.,* 54 S. C., 511, 32 S. E., 567, is that in that case there was evidence that the railroad company having failed to furnish any car at Aiken so that Mrs. Pickens could continue her journey from Augusta to Edgefield, she had no alternative but to leave the station and encounter the hardship of the storm from which she suffered. Here the plaintiff without necessity chose to make the long journey over the mountain trail.

In *Richardson* v. *Railroad Co.,* 71 S. C., 445, 51 S. E., 261, there was evidence to the effect that the passenger hav-

ing a ticket from Columbia to Latta took a train not scheduled to stop at Latta in consequence of the mistake of the ticket agent. It differed from this case in that the conductor not only refused to stop at Latta but demanded of the passenger additional fare to Dillon, which was the only stop anywhere in the vicinity of Latta, and upon the passenger's refusal to pay stopped the train and put him off against his will as a trespasser. The question of proximate and remote causes and effects did not arise in that case nor in the case of *Samuels* v. *R. R. Co.*, 35 S. C., 493, 14 S. E., 943.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed and the case remanded to that Court for a new trial.