· 7283

### BERLEY v. SEABOARD AIR LINE RY.

1. AMENDING PLEADINGS—CARRIER—PASSENGER.—In suit for damages for failure to stop train on flag for passenger, there being no allegation, carrier knew he was ill, it is proper to strike from the complaint the words "who was ill."

2. IBID.—IBID.—IBID.—WILFULNESS.—Injured feelings and insult are not proximate results of mere failure to stop a train.

3. IBID.—IBID.—IBID.—IBID.—In this action it was error to strike out the allegations to the effect that a passenger left at a station was compelled to remain there for an hour in the cold wind, and was compelled to procure a private conveyance and drive a long distance through the cold and wind, whereby he was caused to suffer pain, annoyance, inconvenience, pecuniary loss and his illness increased.

4. CARRIER—PASSENGER.—Principles of law applicable to cases in which carrier fails to stop on flag and take on a passenger stated.

Before GAGE, J., Richland, October, 1908.    Modified.

Action by W. Q. M. Berley against Seaboard Air Line Ry. From order striking out portions of the complaint, the plaintiff appeals. The complaint is:

I. "That the defendant, Seaboard Air Line Railway, is a corporation created and existing under the laws of the States of Virginia and North Carolina and was at the times hereinafter mentioned operating and controlling, as owner thereof, a railroad extending from the city of Columbia, in the County of Richland, in the State of South Carolina, to the city of Savannah, in the State of Georgia, passing through the counties of Richland and Lexington, in the State of South Carolina, and having stations along said railroad in the counties of Richland and Lexington where it transacts its business.

II. "That the defendant is, and was at the times hereinafter mentioned, a common carrier of passengers on and over said railroad for hire between the places hereinafter mentioned, namely, Swansea, South Carolina, and Columbia, South Carolina.

III. "That Section No. 2134 of the Code of Laws of South Carolina expressly provides: 'Every railroad company in this State shall cause all its trains of cars for passengers to entirely stop upon each arrival at a station, advertised by such company as a station for receiving passengers upon such trains, for a time sufficient to receive and let off passengers;' and section No. 2202 of the Code of Laws of South Carolina also provides that 'each and every act, matter or thing in this chapter declared to be unlawful, is hereby prohibited; and in case any person or persons as defined in this chapter engaged as aforesaid shall do, suffer, or permit to be done, any act, matter or thing in this chapter prohibited or forbidden, or shall omit to do any act, matter, thing in this chapter required to be done, or shall be guilty of any violation of the provisions of this chapter, such person or persons shall, where no specific penalty is hereinbefore already provided for such violation, forfeit and pay to the person or persons who may sustain damage thereby, a sum equal to three times the amount of damage so sustained, to be recovered by the person or persons so damaged, by suit in any Circuit Court in this State, where the person or persons causing such damage can be found, or may have an agent, office, or place of business; but in any such case of recovery, the damage shall not be assessed at a less sum than two hundred and fifty dollars. * * *'

IV. "That on the morning of the twenty-fifth day of January, 1907, between four and five o'clock, the plaintiff [who was ill] and desired to return to his home at Lexington, S. C., purchased from the station agent of the defendant at Swansea, a station on the line of defendant's railroad in the County of Lexington and State of South Carolina, a ticket from Swansea, aforesaid, to the city of Columbia, S. C., which is the most direct route from Swansea to Lexington by rail, and paid said station agent the fare usually demanded and received by defendant for a ticket from Swansea to Columbia, and, before he purchased said ticket, he was

assured by said station agent that the regular passenger train of the defendant, which would soon approach Swansea station from Savannah for Columbia, would stop at Swansea upon its arrival there, for all passengers for Columbia to board it.

V. "That having purchased said ticket from the station agent of the defendant at the time and place aforesaid, it was the duty of the defendant to stop said passenger train or cars upon its arrival at Swansea station for a time sufficient to receive plaintiff on board of said train, or long enough for plaintiff to get on board thereof; the said Swansea being a regular station on defendant's said line of railroad at which all of its regular passenger cars and passenger trains stopped upon arrival thereat, for the purpose of receiving and letting off passengers, and said station was, and is advertised by the defendant as a station at which its passenger trains, or cars of passengers, would stop upon arrival to receive and let off passengers.

VI. "That soon after purchasing said ticket from the station agent of the defendant at the time and place aforesaid, the defendant's regular passenger train or train of passenger cars from Savannah to Columbia approached said Swansea station at a rapid rate of speed, but did not stop at said Swansea station upon its arrival there, for the purpose of receiving and letting off passengers, although it advertised that Swansea was a station at which said passenger train, as well as all of its other regular passenger trains, would stop upon arrival for a sufficient time to receive and let off passengers thereat; but regardless of its duty in that respect, and in utter disregard of the rights of the plaintiff and in violation of the two sections of the Code of Laws referred to in the third paragraph of this complaint, the defendant, through its agents and servants, negligently, recklessly, wantonly and wilfully failed and refused to stop said train at Swansea aforesaid for plaintiff to get on board thereof, and negligently, recklessly, wantonly and wilfully

caused said train to pass said station at a rapid rate of speed going in the direction of Columbia, and thereby made it impossible for plaintiff to get on board of said train—thus leaving the plaintiff standing on the cold, damp ground, and out in the cold wind.

VII. "That, by reason of the negligent, reckless, wanton and wilful conduct of the defendant, its agents and servants, in failing and refusing to stop said passenger train or train of passenger cars long enough for plaintiff to get on board of it, and in causing said train to pass said station at a rapid rate of speed as hereinbefore stated, and as a direct result thereof, the plaintiff [was insulted, his feelings injured] ; [he was compelled to remain at Swansea in the cold wind for more than an hour and was compelled to procure a private conveyance to carry him to his home at Lexington through the country in the cold wind, during all of which time he suffered much pain, annoyance and inconvenience; he was greatly annoyed, delayed and inconvenienced in reaching Lexington; his illness was very much increased by being exposed to the cold wind in reaching his home at Lexington, and from the annoyance, delay and inconvenience; he was subjected to pecuniary loss and expense and was otherwise greatly injured] ; and the defendant is liable to the plaintiff in damages for violating sections No. 2134 and No. 2202 of the Code of Laws of South Carolina for failing and refusing to stop said train at said station, all to the damage of the plaintiff two thousand dollars.

"Wherefore, plaintiff demands judgment against the defendant for the sum of two thousand dollars and the costs."

*Messrs. Graham & Sturkie,* for appellant.

*Messrs. Lyles & Lyles,* contra.

August 28, 1909. The opinion of the Court was delivered by

MR. JUSTICE WOODS. The action is for damages alleged to have been suffered by the plaintiff from the failure of the defendant to stop its train at Swansea, a station on its road, where the plaintiff had purchased a ticket, and was waiting to take the train to Lexington. The appeal is from an order striking out as irrelevant and redundant the portions of the complaint indicated by brackets.

There is no allegation that the defendant had notice that the plaintiff was ill. Hence there was no basis for the recovery of damages for any increased injury, or suffering, arising from the plaintiff's illness. The cases on the subject are cited in *Kolb* v. *Ry. Co.*, 81 S. C., 536, 62 S. E., 872. The words, "who was ill," were properly stricken out.

The failure to stop a train at a station implies no personal reflection on persons expecting to board it. There is no allegation that the failure to stop was accompanied by contumely or personal abuse; and injured feelings and insult are certainly not proximate results of a mere failure to stop a train. The Circuit Judge was, therefore, right in striking out the words "was insulted, his feelings injured."

We are of the opinion that there was error in striking out the following allegations: "he was compelled to remain at Swansea in the cold wind for more than an hour and was compelled to procure a private conveyance to carry him to his home at Lexington through the country in the cold wind, during all of which time he suffered much pain, annoyance and inconvenience; he was greatly annoyed, delayed and inconvenienced in reaching Lexington; his illness was very much increased by being exposed to the cold wind in reaching his home at Lexington, and from the annoyance, delay and inconvenience; he was subjected to pecuniary loss and expense and was otherwise greatly injured." In *Milhouse* v. *Ry. Co.*, 72 S. C., 442, 450, 52

S. E., 41, and *Rountree* v. *R. R. Co.,* 73 S. C., 268, 53 S. E., 424, it was held: "When there is testimony showing that the inconvenience was the direct and proximate result of negligence or wilfulness, it may be taken into consideration by the jury in awarding damages."

In *Carter* v. *Ry. Co.,* 75 S. C., 355, 363, 55 S. E., 771, a case relied on by defendant, the plaintiff being misdirected by defendant's agent took a train not scheduled to stop at Zirconia, which was her station. She refused to stop at Saluda, the preceding station, and take the following train to her destination, but chose to go on to Flat Rock, a station beyond, and take a walk of nine miles over a rough mountain trail. The Court held that the evidence failed to show any necessity to take the long walk, but on the contrary, admitted of no other inference than that ordinary prudence required Mrs. Carter to get off at Saluda and take the train to Zirconia, her destination. Under these circumstances, it was held that the defendant was not liable for the hardship resulting from the walk from Flat Rock, because there was no necessity to take the walk. In the course of the discussion, the Court says: "The vital difference between this case and the case of *Pickens* v. *R. R. Co.,* 54 S. C., 511, 32 S. E., 567, is that in that case there was evidence that the railroad company having failed to furnish any car at Aiken so that Mrs. Pickens could continue her journey from Augusta to Edgefield, she had no alternative but to leave the station and encounter the hardship of the storm from which she suffered. Here the plaintiff without necessity chose to make the long journey over the mountain trail."

We think respondent's counsel has well stated the law as established by the cases in this State, in these two propositions:

1. "For failure to stop a train on flag the railroad is responsible to the person desiring to take the train, for injuries that are the direct and immediate consequence of its

negligence in failing to stop, but it is not responsible
4    for injuries proximately resulting from the exposure
unnecessarily incurred by the prospective passenger,
or from his own negligence or reckless conduct.

2. "Although the carrier has been guilty of negligence
towards the prospective passenger, when it fails to stop its
train on flag for him, nevertheless the passenger is under a
duty to use reasonable efforts to minimize his damages, and
can not recover for any injuries that might have been
avoided by the use of reasonable care and diligence, and by
the exercise of proper precautions."

It does not result, however, from the application of these
principles that the portion of the complaint under considera-
tion was irrelevant and redundant for the allegation is, that
the plaintiff was *"compelled* to remain at Swansea in the cold
wind," etc., and "was *compelled* to procure a private con-
veyance to carry him home through the country in the cold
wind," etc. This is an allegation that the course taken by
the plaintiff and his consequent exposure, etc., was a neces-
sity forced on him by the defendant's breach of duty. Hence
as a question of pleading, the allegation should not have
been stricken out. If the plaintiff should fail to introduce
evidence tending to show that his ride through the country
and his exposure to cold was rendered necessary by defend-
ant's failure to stop the train, then his case on that point will
fail on the evidence.

It may be that the allegation was indefinite in not setting
out facts tending to show that the plaintiff was "compelled"
to incur the exposure, and in not indicating the nature of the
pecuniary loss, expense and injury and how it was incurred.
But that question is not involved in the appeal, and on it we
express no opinion.

The judgment of this Court is, that the judgment of the
Circuit Court be modified in accordance with the views
herein expressed.