## 8948

### BRADLEY v. ATLANTIC COAST LINE R. R. CO.

(82 S. E. 1009.)

CARRIER AND PASSENGER.  MISINFORMATION AS TO TRAINS.  DAMAGES.

1. Where plaintiff boarded a through train which did not stop at his destination, under an alleged special contract made with defendant's ticket agent that the train would stop there to set plaintiff down, plaintiff was not entitled to have the carrier's breach of such alleged contract submitted to the jury as a basis for a recovery, in the absence of any evidence that the agent's statement was relied on and that plaintiff suffered damage as the proximate result thereof.

2. There being no evidence to show a choice of routes or trains and no injury arising to an intending passenger from his acting in reliance upon misinformation, as to points at which the train he was about to board would stop, given by carrier's agent, it was error to submit to the jury the question of damages arising to the passenger from such misinformation.

3. Punitive damages may be recovered for injuries caused by the unlawful acts of defendant.

Before C. J. RAMAGE, special Judge, Monck's Corner, November, 1913.   Reversed.

Action by Geo. H. Bradley against Atlantic Coast Line Railroad Company.   From judgment for plaintiff, defendant appeals.   The facts are stated in the opinion.

*Messrs. Simeon Hyde* and *Octavus Cohen,* for appellant, submit:

1. If the passenger, through the misdirection of a ticket agent, boards a train not scheduled to stop at his station, the carrier has the right to correct its mistake after it has been discovered, and is not bound, in the absence of exceptional circumstances, to stop at the station not on schedule, but may require the passenger to get off at the next stop before such station.

FOOTNOTE.—As to liability of carrier for act of agent misdirecting passenger as to route, see notes in 13 Am. & Eng. Ann. Cas. 968; 2 L. R. A. (N. S.) 110; and 24 L. R. A. (N. S.) 1178.

2. If the passenger refuses to get off at the station next before his destination, the carrier may take him beyond his destination and allow him to get off at the next stop thereafter.

3. The passenger has the right to demand courteous treatment, and it is the duty of the carrier so to enforce its rights as not to cause unnecessary humiliation to the passenger.

4. It is the passenger's duty to use every reasonable effort to minimize his damages, and any damage which could have been avoided by the exercise of reasonable effort on his part will not be considered as a proximate result of the carrier's delict.

5. If the passenger is not ejected from the train, but gets off at the stop next before his destination and waits for the next local train or takes other means of conveyance, he is entitled to recover damages for only such delay, inconvenience and expense as were the proximate result of the carrier's breach of contract and could not have been avoided by the exercise of reasonable prudence on the passenger's part.

6. If the passenger knowingly and voluntarily refuses to assist the carrier in its effort to correct its mistake by alighting at the next stop before his station or the next stop beyond, and in consequence thereof suffers inconvenience or discomfort, the carrier is not liable for damages resulting therefrom, and at all events the carrier is liable (in the absence of circumstances warranting punitive damages) for such damages only as are the direct outcome of its delict and cannot be avoided by the use of all reasonable means on the part of the passenger; and cite: 2 Hutch. Carriers (3d ed.) 1227; 75 S. C. 355; 71 S. C. 444; 82 S. C. 478; 90 S. C. 507; *Ib.* 517.

*Messrs. Logan & Grace* and *E. J. Dennis,* for respondent, cite: 71 S. C. 444, 446, 448; 69 S. C. 327; 64 S. C. 514; 88 S. C. 426.

September 28, 1914.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

Mr. Bradley was in Jesup, Georgia, on a visit and desired to return to his home at St. Stephens, South Carolina, with his wife and grandson. He presented himself to the ticket agent at Jesup and purchased the ticket for their transportation. The plaintiff claims that he asked for information as to the proper train and the agent pointed out the train that would go to and stop at St. Stephens. That before he got to Charleston the conductor told him that the train he was on did not stop at St. Stephens and he must get off at Charleston and wait for a local that did stop at St. Stephens. This the plaintiff declined to do. That after the train left Charleston the conductor told him that he had warned him to get off at Charleston and unless he paid additional fare from St. Stephens to Lanes, where the train did stop, he would put him off the train. That he could pay the cash fare from St. Stephens to Lanes, then he could return to St. Stephens and return on the local that did stop there. Under these circumstances and the threat of expulsion, the plaintiff paid the additional fare. The plaintiff had notified his son to meet him at St. Stephens. When the plaintiff returned the conveyance had left St. Stephens and the plaintiff was required to leave his wife and grandchild in St. Stephens for the night and walk to his home for a conveyance to take them home. The plaintiff relied upon the general contract, as evidenced by his ticket from Jesup to St. Stephens, and a special contract with the agent at Jesup, that the train would stop at St. Stephens. His damages alleged were the additional fare from St. Stephens to Lanes and return and consequent illness, and rude and disrespectful treatment on the train, and punitive damages for the wilful invasion of his rights as a passenger.

The defendant admitted the purchase of the ticket from Jesup to St. Stephens, denied the special contract and misrepresentation. Denied the duty to stop at St. Stephens, but said that it had provided a local from Charleston and it was incumbent on plaintiff to get off the through train at Charleston and wait for the local. The trial was had and the verdict and judgment were for the plaintiff. The defendant appealed on several exceptions, but the appellant states two questions.

> "Was there a contract made between the railroad 1, 2 company, through its agent at Jesup, Ga., with the passenger, Bradley, plaintiff herein?"

The presiding Judge refused to charge the appellant's fourth request to charge, which was as follows:

"Even if the jury find from the evidence that the agent at Jesup told the plaintiff that this train would carry him to St. Stephens and put him off there, this would not constitute a guarantee that such train would stop at St. Stephens and would not warrant a verdict for the plaintiff."

There seems to have been some confusion in the trial of this case as to the exact questions involved. The plaintiff alleged two sources of responsibility for the defendant—*i. e.,* 1st. A general contract to carry the plaintiff from Jesup to St. Stephens. 2d. A special contract that he should be carried on that train without change of cars.

The first ground was admitted. The second was denied. Over the appellant's objection the second was submitted to the jury. Under the case as made by the record, the special contract should not have been submitted to the jury because there was no evidence of a contract or misinformation that produced injury to the plaintiff. It is not every misstatement in the scope of his duty, made by a railroad official to a passenger, that gives rise to an action for damages, but only those on the faith of which the passenger has acted to his injury which are actionable. Granting that the agent at Jesup said to the plaintiff, "Take that train; it will stop

at St. Stephens and put you off," then the plaintiff would have to show that he had suffered injury by reason of the fact that he had acted on the misinformation. That might be shown in many ways, for instance, that there was a choice of routes or trains, or that the plaintiff would not have taken the journey if it necessitated a change of cars, etc. There was no evidence of any injury that arose from the misinformation or the breach of a special contract, even if it were within the apparent scope of the agent's authority to make a special contract. The appellant had contracted to carry the plaintiff from Jesup to St. Stephens and was bound to make reasonable provision to carry out its contract.

The appellant and respondent are equally confident of success, the one relying on *Carter* v. *Railway,* in 75 S. C. 355, 55 S. E. 771, and the other on *Richardson* v. *Railroad,* 71 S. C. 446, 51 S. E. 261.

In the *Carter* case it affirmatively appeared that the through train that did not stop was followed by a local train that did stop and that reasonably adequate provision was made for local travel.

In the *Richardson* case it affirmatively appeared that the through train was the only train that would enable the passenger to reach his destination that day. Here there was no evidence either way except that there was one local per day. That may have already passed. This Court having found error in submitting the question as to damages from the misinformation, as appears from the record, there must be a new trial.

Appellant's second proposition is that there is no evidence from which the jury could have found punitive damages.

If the acts of the defendant were unlawful, then, under the *Richardson* case, *supra,* punitive damages could be awarded.

Judgment reversed.

MR. JUSTICE HYDRICK concurs in the result.