9984

## MAY v. SEABOARD AIR LINE RY. CO.

### (96 S. E. 482.)

1. CARRIERS — CARRIAGE OF PASSENGERS — FAILURE TO CARRY WITHOUT CHANGE.—Where plaintiff purchased a through ticket from S. to C., and at a point where the train divided, one part going to C., took the part which the conductor indicated for that destination, and thereafter had to change at an intermediate point to board a following train for C. because the train he was on did not stop there, the railroad was not liable to him for failure to transport him to his

destination without requiring him to change cars, since it is the duty of a passenger to use due diligence to ascertain if the train he boards stops at his destination, and generally a carrier has a right to correct a mistake by the passenger in boarding the wrong train by letting him off at a stopping place of the train before passing the passenger's destination, so that the latter may take the next train scheduled to stop there.

2. CARRIERS—INTERSTATE COMMERCE—SPECIAL PRIVILEGES.—A railroad engaged in interstate commerce, under U. S. Comp. St. 1916, sec. 8569, subd. 7, could not extend to any shipper or person any privileges or facilities except those specified in its tariffs filed as required.

Before SEASE, J., Union.

Action by Gordon Hill May against the Seaboard Air Line Railway Company. From an order of nonsuit, plaintiff appeals.

*Messrs. Wallace & Barron,* for appellant. *Messrs. Wallace & Barron,* for appellant, submit: *Infants are entitled to greater care as passengers than adults:* 2 Hutchinson on Carriers (2 Ed.), sec. 995. *Plaintiff was lawfully on train from which he was ejected:* 2 Hutchinson on Carriers (3d Ed.), sec. 1062. *The ejectment at Chester was illegal:* 2 Hutchinson on Carrriers (3d Ed.), sec. 1090. *He was wronged and damaged; loss of time, inconvenience, mortification, distress of mind and body, and any indignity enter into compensatory damages:* 2 Hutchinson on Carriers (3d Ed.), sec. 1066. *Habitual custom of special stopping of unscheduled trains at a point not scheduled for it, for certain passengers, becomes binding on the carrier:* Hutchinson on Carriers (3d Ed.), sec. 1080.

*Messrs. J. A. Sawyer* and *Glenn & Glenn,* for respondent. *Messrs. Glenn & Glenn* cite: *As to the right of railroad companies to run passenger trains stopping only at important stations:* 75 S. C. 355 to 369; 5 Am. Rep. 60 (Ill.); 5 Am. S. Rep. 780 (Kan.); 10 Am. Rep. 715 (Penn.); 82 S. C. 478; Hutchinson on Carriers, vol. XI, p. 1227, sec. 1060.

June 24, 1918.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

This is an action for damages alleged to have been sustained by the plaintiff, through the failure of the defendant to transport him to his destination, without requiring him to change cars, on the ground that the train upon which he first became a passenger did not stop at the station mentioned in his ticket as his destination.

The appeal is from an order of nonsuit, on the ground that there was a failure of testimony, to sustain the material allegations of the complaint.

The plaintiff testifies as follows:

"I am 12 years old. I bought a ticket from Sanford (N. C.) to Carlisle (S. C.). It was a straight through ticket. The Seaboard runs from Sanford, N. C., to Carlisle, S. C. When I bought my ticket at Sanford, the agent did not say anything to me about the train not stopping at Carlisle. I got aboard the train at Sanford and went to Hamlet and then changed. The train divides at Hamlet, and part comes to Carlisle, and part to another direction. At Hamlet I asked the conductor of the Seaboard what train I should take to go to Carlisle, and he pointed out a train to me, and I boarded it. From Hamlet I came to Chester, where I got off. At Monroe I asked the conductor on the train from Hamlet if I would have to change anywhere between there and Carlisle, and he said he didn't know, he didn't go any further than Monroe, and said he would get out and see the other conductor. He did and came back, and said for me to keep my seat. That was the conductor that carried me from Hamlet to Monroe. The conductor that he went to see ran from Monroe to Carlisle. The conductor from Hamlet to Monroe came back to me and said the other conductor did not say anything, and he told me to keep my seat, and I did so. After we left Monroe he saw my ticket, and told me

I ought to have changed trains at Monroe, but said it would be all right for me to change at Chester. He told me I should have changed at Monroe and waited for the other train. I told him what the other conductor said, and he said it would be all right, that I could change at Chester, and I told him that I did not want to change at Chester, that I had a ticket to Carlisle, and he told me the train wasn't going to stop at Carlisle, and for me to get off at Chester. I told him what the other conductor told me; that he went out there and saw that conductor at Monroe on the train that went from Monroe to Carlisle, and that he didn't say anything, and told me to keep my seat. When I told him I didn't want to get off at Chester and that my ticket called for Carlisle, he said the train wasn't going to stop at Carlisle, and for me to get off at Chester. I did so because I didn't want to go on past Carlisle.

There is no testimony tending to show that the plaintiff made any inquiry of the agent at Sanford when he purchased his ticket in regard to the stations where the train stopped.

"There can be no doubt of the right of railroad companies to run passenger trains stopping only at important stations, provided reasonably adequate provision is made by other trains for the accommodation of local travel. Incident to this right of a railroad company, it is the duty of a passenger, before boarding a train, to use due diligence to ascertain if it stops at his destination, and if the passenger fails to use the means of information at his command, he cannot complain of the resulting inconvenience or damage, even if on his refusal to pay the additional fare to the next regular stopping place he is ejected from the train." *Carter v. Railway,* 75 S. C. 355, 55 S. E. 771.

In that case the Court also says:

"As a general rule, where a passenger on account of the mistake of the carrier's agent boards a train not scheduled to stop at his station, the carrier has a right to correct the mis-

take by letting the passenger off at a stopping place of that train before passing the passenger's destination, so that he may take the next train scheduled to stop at his destination; and it is the duty of the passenger to stop off and wait for such train."

See, also, *Black v. Railway,* 82 S. C. 478, 64 S. E. 418.

The appellant also assigns error on the part of his Honor, the presiding Judge, in refusing to allow him to introduce testimony for the purpose of establishing the custom of the through trains at Carlisle.

It is only necessary to call attention to subdivision 7, sec. 8569, p. 3831, United States Compiled Statutes 1913, vol. IV (U. S. Comp. St. 1916, sec. 8569; subd. 7), to show that the defendant was not allowed to "extend to any shipper or person any privileges or facilities in the transportation of passengers or property, except such as are specified in such tariffs."

Affirmed.