MARY WELLS *v*. ALABAMA GREAT SOUTHERN RAILROAD CO.

1. RAILROADS. *Right to establish depots and schedules for trains.*
    Railroad companies are permitted to establish depots and to arrange their own schedules for the safe and proper management of trains.

2. SAME. *Stopping place for trains. Right of company.*
    In the absence of a special contract, a passenger who embarks on a railroad train supposing it will stop at a certain place, cannot complain of the refusal to stop there if it is not a depot or stopping place.

3. EVIDENCE. *Allegations. Declarations of ticket agent.*
    In a suit against a railroad company the plaintiff will not be permitted to prove the statements of a ticket agent to establish a contract for passage, where there are no averments in the declaration giving notice that such statements will be relied on.

4. SAME. *Declarations of station policeman. When not binding on company.*
    A mere railroad policeman engaged in the duty of assisting persons on and off trains, and in preserving order about the depot, has no implied authority to make contracts or to bind the company by his admissions. Therefore his statements to a passenger boarding a train that it will stop at a certain point are not admissible in a suit against the company for failure to stop at such place.

FROM the circuit court of Lauderdale county.

HON. S. H. TERRAL, Judge.

The appellant alleges in her complaint that she applied to defendant's ticket agent in Meridian to purchase a ticket to Russell's station, on the line of appellee's railroad, and that the agent refused to sell a ticket to that point; that her husband then applied to the policeman employed by the defendant at the Meridian depot for information and direction, and that said policeman directed him to put appellant on the train and that the conductor would put her off at Russell's station, and that she with her infant child accordingly boarded the train; that after leaving Meridian the conductor passed through the train and collected twenty-five cents, the full fare to Russell's station; that Russell's is a post-office and flag-station where appellant had frequently gone, and where the train had often stopped to put her off, and that defendant's trains were

accustomed to stop there; that the conductor, notwithstanding this, stopped his train when about three miles out from Meridian and put plaintiff, with her child and box, off at Wallaces, a place where the train was not accustomed to stop, against her protest, and in violation of her contract to be taken to Russell's; that it was dark when she was put off, and that Wallaces was a low, damp, and uninhabited place, and that she was, in consequence of such action, compelled to walk several miles to Russell's, and to carry her infant of about four months old, together with a box containing clothing, by means of the fatigue and exposure resulting from which plaintiff alleges that she was made sick and suffered great pain, and was permanently injured; wherefore she sues.

The defendant pleaded not guilty, and evidence was introduced showing that both appellant and her husband, at different times, on the morning in question, applied to purchase a ticket for appellant to Russell's station, and that on each occasion the ticket agent refused to sell her such ticket; that the railroad policeman showed her the train, and that she boarded it; that she paid her fare of twenty-five cents to the conductor, telling him she could not buy a ticket and so paid the fare, and that the conductor then told her the train was not going to stop at Russell's; that appellant asked what she should do, and the conductor replied that he would put her off at Wallaces; that she said she did not want to get off there, but could do so; that when Wallaces was reached, the train porter came to her and told her to come on, and carried out her box and took the baby down, and the train pulled away; that it was then about daylight, and she walked from that point to Russell's, between two and three miles, carrying her child and box. There was evidence tending to show that by reason of this exertion, excitement, and fatigue, appellant received serious injury, which was likely to be permanent.

Appellant showed by one witness that he had before the date of this occurrence gotten on the train there at Russell's, but he stated that the train was not accustomed to stop there. Another witness testified that this train stopped there once last year; and another testified that while it was not accustomed to stop, it did stop when

flagged, and that he had never known it not to stop, except on one occasion, when it was three hours late.

The defendant showed by two of its conductors, who managed the particular train in question, that Russell's was not a flag station, nor a stopping place, and had not been for several years; that there was no side-track there, and that no train was scheduled to stop there; that it would have been a violation of positive rules for any conductor in charge of the train in question to stop there, and that they had never stopped a train there ; that this train was the local passenger train and was run to meet the fast train, the "cannon-ball," and that it had to make its schedule to meet that train which would pass at Toomsuba, the first regular station; that Wallaces was a flag-station, and that the train was allowed to halt there when necessary. The defendant showed by the two conductors that Toomsuba was the first station on defendant's line out of Meridian, a distance of twelve miles, and that the regular rate then was three cents per mile, but that no fare less than twenty-five cents, for any distance, was charged.

The conductor testified that when he told plaintiff he could not stop at Russell's, she requested him to put her off at Wallaces, but she testified that she did not assent to this voluntarily. The conductor further stated that plaintiff at first said she wanted to get off at McInnis's crossing. Plaintiff denied this.

What was said by the ticket agent and the policeman at Meridian was excluded by the court against appellant's objection.

A peremptory instruction to find for defendant was given and a verdict for defendant followed. From the judgment on this verdict an appeal was taken here.

*Witherspoon & Witherspoon*, for appellant.

Counsel filed an elaborate argument, being in the main a review and discussion of the facts, in which the following points were made :—

1. The evidence establishes that there was a contract between the appellant and the railroad company by which the latter was to carry the former from Meridian to Russell's station. The ticket agent, being informed that she desired to go to Russell's, said he did

not sell tickets to that station, and that she could pay her fare on the train. She then applied to the depot policeman, agent of appellee, for information about the trains, and told him she wanted to go to Russell's station. He showed her the train of appellee and told her when it would leave, and with her infant and box she took that. It was part of his duty to assist passengers on and off the trains of this road. This constituted a contract.

Then, when the conductor came for her ticket, appellant told him she desired to go to Russell's station, and he took the fare. *After receiving it,* and without offering to return the money, he informed her that he would have to put her off at Wallace's switch, against which she protested. . If there was no contract before, this action of the conductor imposed the obligation on the company to put appellant off at her destination. It matters not if we concede that Russell's station was not a stopping place. The conductor had authority within reasonable bounds to relax the rules. 98 Am. Dec. 336. The action of the conductor in putting appellant off at Wallaces, alone and in the dark, was unnecessary and wholly inexcusable. The testimony of the conductor is unreasonable and contradictory. Especially is this true of his statement that appellant agreed to get off at Wallaces, and that she asked to be put off at McInnis's crosssing.

2. The testimony shows that Russell's is a station in the common and proper acceptation of the term. The trains frequently stopped there, and appellant herself had several times gotten on and off this very train prior to August 14, 1888. Others testified that they never knew the train to fail to stop when flagged. Whether in point of fact it was a station or not, the company by this custom led the public to regard it as such. If not a regular station it was a " flag-station," where the trains stopped whenever the business of the place demanded it. It matters not that trains frequently run by without stopping. They often run by small country stations. If Russell's was not a station it would have been easy for the company to have proved it officially.

3. That appellant has sustained damages is too plain for argument. We think the facts clearly show that the damages were

sustained in consequence of the wrongs of appellee. Where she was put off the train is a low, swampy, uninhabited place, and there was no platform, light, or any sort of convenience, and she had to walk down the railroad track nearly three miles, carrying her child and box. According to her own testimony and that of physicians her injuries are permanent.

4. The court erred in giving a peremptory instruction for defendant. Conflicting questions of fact were involved that should have been submitted to a jury.

*Fewell & Brahan,* for appellee.

In a lengthy written argument, without citation of authority, counsel made the following points :—

1. Being refused a ticket to Russell's, appellant boarded the train anyway. When informed by the conductor that he could not stop at Russell's, but would put her off at Wallaces, *she made no request to be taken elsewhere.* Clearly his duty was to stop at Wallaces, the nearest place to her destination, and let her get off. This he did. What else *could* he do ?

2. Appellant as a passenger owed a duty to herself. She was bound to know what train to take, and when informed that the train could not stop at her destination it was for her to decide what new course to pursue. The conductor could not put her off with her child in the woods, and he acted reasonably and did the best he could under the circumstances. No complaint that he was uncivil. He could not disregard the schedule, and had to clear the track for the fast train that was to pass within about five minutes. If he had carried the plaintiff *past* her destination to Toomsoba, and she had attempted to walk back, there would have been complaint.

3. There was no contract, express or implied, to carry plaintiff to Russell's. The conductor positively refused to do this. Nothing is to be implied from his acceptance of the twenty-five cents, for that was the fare to Wallaces.

4. Russell's is not a station. The evidence shows that it is not a stopping place for this train, and a verdict finding that it was would not have been allowed to stand.

5. Aside from the question of defendant's liability, we contend that the damages claimed are entirely too remote and uncertain. They are attributable to plaintiff's own act, and not to any act or misconduct of defendant.

6. The statements of the ticket agent were properly excluded. The declaration undertook to set out what he had done, and made no reference to his statement that plaintiff could pay on the train. If this was material to be proved, it should have been alleged. When objection was made to the testimony, plaintiff did not offer to amend.

7. The statements of the depot policeman were properly excluded. He had no authority to bind the company as to any contract by his statements or admissions.

WOODS, C. J., delivered the opinion of the court.

While it is true that railroad companies engaged in carrying passengers for hire are under legal obligation to receive and carry upon their trains persons desiring to be transported who properly deport themselves and pay the required fare, yet it is equally true that such companies are permitted to establish their own depots, or stations, and to arrange their own schedules for the safe and proper movement and management of their trains. In the absence of a special contract, no passenger can be heard to complain in court that the carrier has refused to stop any train at any point other than one of its stations, even if such passenger shall have mistakenly embarked thereon, and shall have paid the passage-money. To allow the caprice, or the wish, or even the seeming necessity of an individual to procure stoppages of trains at unaccustomed points, and to disarrange the schedule fixed for their predetermined and regular movement, would be to permit not only vast property interests, but human lives, as well, to be certainly and recklessly put in peril.

The appellant cannot maintain her cause in this proceeding if she was denied the privilege of disembarking at a point on defendant's line of railway other than a station, and where trains were not accustomed to stop, but was put off, in a civil manner, at

the stopping place nearest her destination (she having expressed no wish to be carried to any other station more remote), unless she can show, affirmatively, a special contract with the defendant to transport her to the desired, but unaccustomed, point.

The evidence in the case before us demonstrates with certainty that Russell's, the point to which appellant desired to be carried, was not a station, or accustomed stopping place, and that it had not been for several years before the injury complained of occurred. There seems to us no room for controversy on this point in the case. It is apparent that if any train had for a great while, prior to the date of the alleged injury, stopped at Russell's, such stopping was unauthorized and was in violation of the rules of the railroad company.

It is strongly insisted by counsel for appellant that, even conceding the correctness of our conclusion just announced, the appellant is entitled to a recovery by virtue of a special contract made by defendant to transport her to an unaccustomed stopping-place. It is urged that the acceptance of a sum, which would have been the regular fare to Russell's, by the conductor of the train, after knowledge that appellant took the train desiring to go to that point, and after her request to be put off at that point, was in itself tantamount to a special contract with defendant to comply with her wish. It is to be said in reply to this, that the fare so collected by the conductor was the proper fare for a passage to any point not exceeding eight miles from Meridian, the place where appellant embarked. It was the proper fare for a passage to Wallaces also, and, as already stated, to any point not exceeding eight miles from Meridian. The sum collected by the conductor was twenty-five cents, and that was the prescribed rate for any distance not exceeding eight miles. If the conductor was to collect any fare from appellant (and his duty required him to collect the fixed rate), he was bound to collect just what he did; unless, indeed, appellant had expressed a desire to be carried to some other station more remote from her destination, and of this there is no intimation whatever in the record.

Moreover, the conductor is not, ordinarily, the agent of defendant

to contract with persons for transportation; he was not the agent to whom appellant made application, first, for transportation on the occasion we are looking at. The defendant's ticket agent is, ordinarily and properly, the person who is authorized to make such special contracts, and to whom prudent travellers make application. And this is exactly what the appellant did. Before embarking she applied to the ticket agent to purchase a ticket for Russell's and was refused. Not content with one refusal, application was made the second time and was again refused. Surely these facts afford no support to the theory of a special contract. On the contrary, they afford convincing proof that there was no such contract, and, further, that appellant, as a reasonable being, was thereby warned that the taking of the train for Russell's would be at her own peril.

It is contended by counsel, however, that the court below erred in this connection in declining to permit appellant to state to the jury certain declarations made to her by the ticket agent, to the effect that appellant might board the train without a ticket and pay her fare on the car. It is sufficient to say that the pleading on which defendant took issue contained no averment of such declarations. In the absence of any averment of these declarations, and in the absence of any notice to defendant to prepare to meet that issue, this offer to introduce evidence of such declarations was, we think, rightly denied by the court. Besides, if the declarations of the ticket agent were thought by counsel to be relevant and important, appellant might then have asked leave to amend her complaint in this particular, in order to meet the objection. But no amendment was sought to be made.

The offer of appellant to introduce evidence of statements made by defendant's policeman in Meridian, at the time of appellant's taking the train, was also properly refused by the court. So far as the record shows anything on the question of the policeman's powers and duties, it appears that he was a mere policeman engaged in the simple duty of assisting persons on and off defendant's trains, and in preserving order about the depot. It was beyond the scope of his powers to make contracts for transportation which at

all bound his principal, even if he had assumed to do so. We are of the opinion that no error was committed in excluding the policeman's statements from the jury.

The peremptory instruction to the jury was proper on all the evidence, and the judgment of the court below is,

*Affirmed.*