AURELIA JACKSON *v.* ALABAMA & VICKSBURG RAILWAY CO.

1. RAILROADS. *Ejection of passenger.*

    A railroad company has the right to eject a person from its train who has neither a ticket nor the money to pay fare, but the right must be properly exercised.

2. SAME. *Case. Circumstances wrongful.*

    The ejection from a passenger train for nonpayment of fare of a woman, who, on taking passage, honestly, but mistakenly, believed she had the money to make such payment, and makes known the facts, is wrongful when such ejection takes place in a swamp, remote from human habitation, on a dark, cold and rainy night.

FROM the circuit court, first district, of Hinds county.

HON. ROBERT POWELL, Judge.

Aurelia Jackson, the appellant, a woman, was the plaintiff in the court below; the railway company, the appellee, was defendant there. A demurrer was interposed by defendant to the declaration; the court below sustained the same, and, plaintiff not asking to amend, dismissed the suit. The plaintiff appealed to the supreme court. The averments of the declaration are sufficiently stated in the opinion of the court.

*Brame & Brame*, for appellant.

Plaintiff was a passenger, and as such was entitled to the rights and privileges of passengers. She was as much a passenger as if she had a ticket or money to pay her fare. But neither one of these is requisite for a person to become a passenger. This court heretofore used the following language as to who is a passenger: "The assent of defendant as to plaintiff's application to go on its cars to Bibb Station entitled plaintiff to go, and she thereby became rightfully a passenger upon such as-

sent, whether she paid her fare or not, and was in no default until it is shown that upon such demand she refused to pay.'' *Hurt* v. *Railroad*, 40 Miss., 391.

In the case at bar the appellant had done everything essential to become a passenger, and she had actual contractual relations with appellee by its conduct and by its assent.    She made application to become a passenger, her application was accepted, assented to, and she actually became a passenger.    When she had the train flagged, it was stopped.    The conductor certainly knew that she got on, and presumably he signaled the engineer to go ahead when the passenger had been received on the train. Will this court hold that a person is not a passenger until he has paid his fare, who, perchance, has boarded the wrong train, or assisted an invalid on the cars, the train started, and, being on there by accident, or against his own will, he would be a trespasser, and therefore entitled to none of the rights accorded by law to passengers?    We think not.    The actual payment of fare is not essential to the establishment of the relation of carrier and passenger.    5 Am. & Eng. Enc. L., 494.    Appellant was on the train under a reasonable claim of right.    She had become a passenger in this instance as she had often done. The fact of an accidental loss of her fare as she stepped upon the car did not make her a trespasser.    And even if, after demand for her fare and her inability to pay, she was a trespasser, that would not make her one *ab initio*.    But the question as to whether one is or is not a trespasser is a question for the jury.    *Arnold* v. *Railroad*, 115 Pa. St., 135.    And this case should have gone to a jury.

Being a passenger on appellee's train, she should have been given a reasonable time to produce her ticket or pay her fare. And what was a reasonable time was for a jury.    Appellant was not given a reasonable time.    Before the train had proceeded very far her fare was demanded.    The conductor knew that she did not have a ticket, for she had boarded the train at a flag station.    Having demanded fare, he did not give her

a reasonable time to produce the same. The record shows that she was allowed to make only a hurried search through her bundles, protesting against the conductor's threats to put her off, and seeking to make a reasonable explanation. The record also shows that she was carried less than a mile, or about a mile, thus a little more than a minute must have elapsed between the time she boarded the train and the time she was expelled. She had no opportunity to collect her thoughts, to make any arrangements about paying her fare. She was frightened beyond being capable of acting in a calm and deliberate manner. This was caused by the threat of the conductor. She explained her situation the best she could during the few seconds she was allowed to produce her fare. She made a reasonable explanation of the accident or misfortune which had befallen her, and the conductor should at least have given her a chance to apply to fellow passengers for the small amount necessary to pay her fare to Jackson, or at least to Clinton, the next station where the train was to stop. This court has announced, in *Riley* v. *Railroad*, 68 Miss., 765, and *Holmes* v. *Railroad*, 75 Miss., 271, that a conductor must listen to a reasonable explanation made by a passenger, and his refusing to do so casts upon the company the responsibility of taking the consequences of wrong action.

In *Railroad* v. *Wilkes*, 68 Texas, 617, the court said the reasonableness of time allowed for a passenger to produce his ticket or pay his fare is entirely a question for the jury. The court says further that the railroad company is liable in damages for the resulting inconveniences, pain of body and mind, and mortification of feelings.

In every case examined by us a distinction is made in cases where parties wilfully refuse to pay, and where persons are not given time to pay, or have entered the car on the belief that they had sufficient money to pay fare. In every instance the court says that a reasonable time should have been given within which to comply with the conductor's demand. *Railroad* v.

*Bond*, 62 Texas, 442; *Clark* v. *Railroad*, 91 N. C., 506; *Maples* v. *Railroad*, 38 Conn., 557; *Hays* v. *Railroad*, 34 Hun., 627; *Railroad* v. *Maybin*, 66 Miss., 83.

But even if appellant had been a trespasser, as appellee con-tends, it was unlawful for the conductor to eject her in the place and at the time she was ejected. The very rules of the company prohibited this. Rule 166 of the Alabama & Vicksburg Rail-way Company is as follows: "Children of tender years and persons of helpless condition should be ejected only at stations affording protection suitable to their condition." Was it not a direct violation of this rule for the conductor to put the plain-tiff off in the rain, at night, alone in a perfectly helpless con-dition? In every case that we have been able to find on this point, where even a wilfull trespasser is ejected, due care must be taken as to the time, manner and place of ejection.

In *Railroad* v. *Skillman*, 39 Ohio, 444, it is held that upon refusal to pay fare a passenger may be ejected, "provided he was not removed with unreasonable violence or at a place ex-posed to serious injury or danger." *Moore* v. *Railroad*, 38 S. C. 1.; *Wyman* v. *Railroad*, 34 Minn., 210.

*Mc Willie & Thompson*, for the appellee.

The declaration in this case in setting forth the woes of the plaintiff employs so skillfully the powers of rhetoric that the mind of the reader has to keep watch lest abundant high-sounding adjectives obscure the absence of substantial averments, and ill-founded sympathy wholly usurp the place of judgment. Stripped of such factitious aids it presents the ordinary case of the ejection of one who, either from unwillingness or inability to do so, fails either to produce a ticket or pay fare on the demand of the conductor in charge of a railway train, and who there-upon becomes, in the eyes of the law, a mere trespasser.

The plaintiff cannot complain of a lack of time to search for her money when it is conceded that she had none with her. Of the authorities relied upon by her counsel we venture the asser-

tion that not a single one will show that liability has ever been imposed for not allowing a passenger a reasonable time to find his ticket or his money when the passenger had neither a ticket nor money when he got on the train.

Similar infirmities attend plaintiff's allegation that she had with her a valuable watch that she might have hypothecated with some passenger but for the action of the conductor, which was confined to a mere demand of her fare followed afterwards by her ejection from the car on nonpayment. She does not allege that she said anything of her having the watch or that the conductor was aware of her having it, much less of any desire or intention on her part to hypothecate it. The averment that she would pay at the end of her journey is of the same quality as those above considered.

One who enters a railway passenger coach without a ticket becomes, on refusing to pay his fare, a trespasser *ab initio*. *Moore* v. *Railroad Co.*, 36 So. Car., 1, s. c. 58 Am. & Eng. R. R. Cas., 493; *Railroad* v. *Maybin*, 66 Miss., 83, 88.

One who enters a passenger coach in the mistaken belief that he has a proper ticket is not a trespasser in so doing, but becomes such on refusing to pay his fare when he cannot produce his ticket. *Ham* v. *Railroad Co.*, 142 Pa. St., 617.

A passenger who fails to produce a ticket or pay his fare is not entitled to transportation for any distance, and the conductor may eject him at any place, as after his refusal to pay the legal fare there is no contractual relation which would entitle him to be carried to the next station, under a rule of the company requiring its conductors to eject passengers refusing to pay fares. *Moore* v. *Railroad Co.*, *supra;* *Wyman* v. *Railroad Co.*, 34 Minn., 210; *Hardenbergh* v. *Railroad Co.*, 39 Minn., 3; *Railroad Co.* v. *Miller*, 19 Mich., 305.

Where a passenger refuses to pay his fare, on the conductor's demand, he may be expelled at any time or place, provided the act will not result in wanton injury to him. *Lilles* v. *Railroad Co.*, 64 Me., 464; *McClure* v. *Railroad Co.*, 34 Ind., 532;

*O'Brien* v. *Railroad Co.*, 15 Gray (Mass.), 20; *Skillman* v. *Railroad Co.*, 13 Am. & Eng. R. R. Cas., 31; *Haley* v. *Railroad Co.*, 21 Iowa, 15; *Railroad Co.* v. *Miller*, 19 Mich., 305.

The liability of a railroad company for ejecting a passenger or other person for cause at a place distant from any station or dwellinghouse is purely statutory. *Great Western R. R. Co.* v. *Miller*, 19 Mich., 305.

There is no rule of common law requiring a passenger to be put off at any particular place, only it must be at a place where it will not subject him to great peril; therefore, a passenger cannot, at common law, recover for being put off at an inconvenient place. *Great Western R. R. Co.* v. *Miller*, *supra;* *Hall* v. *So. Car. R. R. Co.*, 28 So. Car., 261; *So. Fla. R. R. Co.* v. *Rhodes*, 25 Fla., 40.

There is no statute in Mississippi requiring that passengers or trespassers ejected from railroad trains be put off at stations or any other particular place. It is well settled in Mississippi that the only duties that railway companies owe to those trespassing on their trains or their tracks is that of "doing them no wanton or wilful hurt." *Railroad Co.* v. *Burnsed*, 70 Miss., 437.

The proposition, that the violation of the rule of the company by the conductor gave plaintiff a cause of action, will not bear turning over in the mind. As to the plaintiff, the conductor was the company, and could repeal the rule at pleasure, there being no pretense that plaintiff had knowledge of the rule, or that she acted in any wise upon the faith of its provisions. A company, if appellant's contention be true, whose rules were considerate of the rights of the public would be placed in a worse position than one whose rules were harsh and inconsiderate of such rights. Unless some legal right of the plaintiff outside of the rule was violated, she cannot sue; there was no such violation, and she has no legal right in or to the rule.

Argued orally by *L. Brame*, for appellant, and by *T. A. Mc Willie* and *R. H. Thompson*, for appellee.

WOODS, C. J., delivered the opinion of the court.

Very briefly stated the declaration filed by the appellant in the court below alleges that she boarded, at a switch or flag station, on the line of appellee's railway about four miles west of the town of Clinton, a regular station, soon after nightfall, on November 20, 1898, a passenger train as a passenger in good faith, bound for Jackson, having, as she believed, largely more money than was requisite to pay her fare on the train. No ticket was purchased before boarding the train, as there was no station house or ticket office kept by the railway company at said flag station or switch. Soon after the train had pulled out from the flag station appellant was approached by the conductor and requested to pay her fare, when she vainly made search for the money which she had upon her person when she started to board the train. The conductor was informed by her that she had lost her money in getting on the train or had lost it in the car after entering. Failing to find her money, she was immediately ejected from the train at a point about one mile east of the flag station and about three miles west of Clinton. The night was dark, cold and rainy and the place of her ejection was in a swamp, with water on the sides of the track, and remote from any habitation. The appellant earnestly and tearfully besought the conductor not to eject her, but in vain. She made her way back on foot to the flag station, chilled by winds, drenched by rains and through the darkness. Reaching this flag station, she found no one there and no place of shelter. She then continued her walk to her father's house, three or more miles away, reaching that shelter about midnight. As the result, she became sick and disabled, and has not yet fully recovered. Her money was found the next morning at the point where she got upon the train the night before, and where she had inadvertently dropped it in her effort to board the car.

The question is not whether a railway company has the right to eject one from its train who has neither a ticket or the means of paying fare. That is universally conceded. The question is whether, at the time and place and under the circumstances, the right of ejection in this instance was properly exercised. The appellant was within three miles of Clinton, where shelter and protection could have been had, when she was put off the train in a swamp, on a dark, cold and rainy night, remote from any known habitation and exposed to the discomfort and peril of an ejection under the then known conditions surrounding her.

The demurrer of the railway company admits all the material allegations of the declaration, and should have been overruled. The case presented by appellant's declaration demanded an answer, and a jury should have passed upon the evidence under proper instructions.

*Reversed and remanded.*