## Yazoo & M. V. R. Co. *v*. WALLS.

[70 South. 349.]

1. **CARRIERS.** *Carriage of passengers. Schedules. Duty of carrier's officers. Ejection. Trial. Instructions. Refusal.*

   A railroad company has the right to so arrange its schedules that some of its trains will not stop at all of its stations, and in the absence of a special contract to the contrary is ordinarily under no obligation to stop its trains and discharge passengers at a station at which the train is not regularly scheduled to stop.

2. **CARRIERS.** *Carriage of passengers. Duty of carrier's officers.*

   While it is true that the holder of a railroad ticket should inquire before embarking upon a train whether it will stop at the place to which he has purchased his ticket, nevertheless, the servants of a railroad company are not relieved of all duty in this connection toward a passenger who has mistakenly embarked upon a train not scheduled to stop at the place to which he has purchased a ticket. They should inform him of that fact upon their discovery thereof, so that he may disembark at a regular stop, if any, before reaching his destination and continue his journey on another train.

3. **SAME.**

   If the employees of the company negligently fail to discharge this duty to such a passenger, they have no right thereafter to deal with him in such a manner as to impose undue inconvenience and discomfort upon him in reaching his destination. They have no right to eject him from the train between stations, on a dark and rainy night, at a place with which he is not familiar, even though he fails to pay his fare to the next regular stop.

4. **TRIAL.** *Instructions. Refusal.*

   The error complained of, if error in fact there is, in appellee's first instruction, set out in dissenting opinion, was cured by the granting of appellant's fifth instruction set out in the facts in this case.

APPEAL from the circuit court of Sharkey county.
HON. H. C. MOUNGER, Judge.

Suit by Henry Walls against the Yazoo & Mississippi Valley Railroad Company. From a judgment for plaintiff, defendant appeals.

This is an appeal from a judgment against appellant for two thousand and five hundred dollars damages, alleged to have been sustained by appellee as the result of a fall from a trestle on appellant's road after having been wrongfully ejected from one of its passenger trains. On January 9, 1913, appellee purchased from appellant's agent a ticket from Duncan to Hardee, a station on appellant's line south of Duncan. This ticket reads as follows:

> "Y. & M. V. Railroad Company
> One Passage
> Duncan, Miss., to Hardee, Miss.

Good one day from date of sale for continuous trip via short line on train scheduled to stop at destination; otherwise, passenger must transfer to local train."

A few minutes after appellee purchased this ticket he boarded one of appellant's south-bound passenger trains, not scheduled to stop at Hardee; its stop nearest thereto before reaching Hardee being Rolling Fork. Appellee did not read his ticket, nor did he know that the train would not stop at Hardee. The ticket was handed by appellee to the conductor of the train shortly after leaving Duncan, who punched it and handed it back to him. According to the testimony for appellant, the conductor, when he returned appellee's ticket, informed him that the train would not stop at Hardee, and that he would have to leave it at Rolling Fork, and continue his journey on another train, which would pass Rolling Fork the next morning. This was denied by appellee, who stated that the conductor returned him his ticket without comment. After passing Rolling Fork the conductor informed appellee that the train would not stop at Hardee; that if he remained on the train he would have to go through to Vicksburg, the next regular stop of the train, and pay the sum of fifty-seven cents, the fare from Hardee to that point. Appellee, having no money, was unable to pay this additional fare, whereupon he was ejected from the train. This occurred, according to the testimony of ap-

110 Miss.—17

pellee, about twelve o'clock on a dark, rainy night, between Egremont and Cary (which are stated in the brief of counsel for appellant to be "four and eight miles, respectively, below Rolling Fork") in a field, the size of which does not appear, surrounded by woods and hedges. According to the testimony of appellant, the ejection occurred about three-quarters of a mile south of Rolling Fork, and it was not raining at the time, though it had been earlier in the night. After appellee was put off the train he walked down the track about forty or fifty yards, and either stepped off or fell through a trestle, which he failed to see and did not know was there. He was rendered unconscious by this fall, and remained so for some time. About three or four o'clock in the morning he succeeded in reaching a house about four hundred or five hundred yards from this trestle, and by the occupant thereof was cared for and carried the next day to Cary, and from there he went to Vicksburg, where he was treated for his injuries. According to his testimony he suffered considerably and was not well at the time of the trial. His physician corroborated him as to the suffering, and stated that his body had bruises on it the day after the injury; that one of his kidneys was lacerated, and while he then—at the time of the trial—appeared to be free from pain, his injury was permanent.

The second and third instructions, requested by appellant, and refused by the trial court, and which are referred to in the opinion, are as follows:

"No. 2. The court instructs the jury that the mere fact that plaintiff held a ticket from Duncan to Hardee, and got aboard train No. 15 unless some special contract is shown whereby he was entitled to be carried on said train No. 15, did not entitle him to ride to Hardee on said train No. 15 on the night in question in this case, and the jury will find a verdict for the defendant.

"No. 3. The court instructs the jury that the railroad company has a right to establish a schedule whereby fast trains do not stop at all stations, and it makes no dif-

ference that the holder of a ticket, at the time he purchases it, is not aware that the particular train in question in this case does not stop at his station; and unless the jury in this case believe from the evidence that the agent at Duncan, in the scope of his authority, made a special contract, other than as shown by the ticket in evidence in this case, with the plaintiff, to stop the train at Hardee, you will find a verdict for the defendant.''

The fifth instruction, granted at the request of the appellant, is as follows:

''No. 5. The court instructs the jury that if you believe from the evidence that Conductor Kagler told the plaintiff, before he reached Rolling Fork, that he would have to get off and change trains, and could not go to Hardee on train No. 15, the train in question, then the plaintiff had no right to stay on the train, and you must find a verdict for the defendant.''

The first instruction, granted at the request of the appellee, is set out in the dissenting opinion.

*Mayes & Mayes,* for appellant.

It is now too well settled to admit of argument that it is the duty of a passenger to inform himself of the movements of trains before boarding one; he must ascertain when, how and where he can go under the provisions of his ticket and the regulations of the carrier. And if he fails so to do, and makes a mistake uninduced by the carrier, he is without remedy for being ejected from the train upon which he has no right to ride ,under the provisions of his ticket, or the regulations of the carrier. *Dietrick* v. *Penn. R. Co.,* 71 Pa. St. 432:

''It is also well settled that one who buys a ticket is bound to inform himself of the rules and regulations of the company governing the transit and conduct of its trains. Thus, he must ascertain the train in which he is to go, its stopping stations, his right to get off and get on, to resume his trips, etc.'' *Randolph* v. *Chicago, etc., R.*

*Co.*, 53 Ill. 510; *Atchison, etc. R. Co.* v. *Gants*, 38 Kan. 608.

"The law is well settled that, in the absence of statutory provisions to the contrary, a railroad company may adopt a regulation that a certain train or trains of passenger cars running regularly on its road shall not stop at designated stations or places; and it is the duty of a person about to take passage on a railroad train to inform himself when, where and how he can go or stop, according to the regulations of the company (citations). In this state there is no statutory provision to the contrary, and as the train upon which Gants took passage was not to stop, under the regulations of the company, until it reached Florence, the conductor had the right, after the train started, to stop the train and require Gants to leave it, if he refused to pay the fare which, in addition to the sum paid for his ticket, would have entitled him to ride to Florence" (Citations.). See Also: *Railroad Co.* v. *Swarthout*, 67 Ind. 567; *McRae* v. *Railroad Co.*, 88 N. Car. 526; *Schiffler* v. *Railroad Co.*, 65 Am. St. Rep. 35, and note; *Johnson* v. *Railroad*, 46 N. H. 213; *Railroad Co.* v. *Bartram*, 11 Ohio St. 457; *Beauchamp* v. *Railroad*, 56 Tex. 239; *Carter* v. *Railroad Co.*, 75 S. C. 355; *Duling* v. *Railroad Co.*, 66 Md. 120; *Logan* v. *Railroad Co.*, 77 Mo. 663; *Plott* v. *Railroad Co.*, 63 Wis. 511; *Railroad Co.* v. *Miles* (Ky), 37 S. W. 486; *Railroad Co.* v. *Bell* (Texas), 87 S. W. 730; *Scott* v. *Railroad Co.*, 144 Ind. 125; *Railway Co.* v. *Lightcap*, 7 Ind. App. 249; Note 2 Am. & Eng. Ann., p. 1080. See, also, opinion of GRAHAM, C. J., in margin of reported case, page 1078.

Later cases are collected in a note to *Louisville etc. R. Co.* v. *Scott*, Anno. Cas., 1912 C., page 552, second column.

No. 2. The court instructs the jury that the mere fact that plaintiff held a ticket from Duncan to Hardee and got aboard train No. 15, unless some special contract is shown whereby he was entitled to be carried on said train, No. 15, did not entitle him to ride to Hardee on said train

No. 15 on the night in question in this case and the jury
will find a verdict for the defendant.''

"No. 3. The court instructs the jury that the rail-
road company has a right to establish a schedule where-
by fast trains do not stop at all stations, and it makes
no difference that the holder of a ticket at the time he
purchases it is not aware that the particular train in
question in this case does not stop at his station, and un-
less the jury in this case believe from the evidence that
the agent at Duncan in the scope of his authority made
a' special contract other than as shown by the ticket in
evidence in this case with the plaintiff to stop said train
at Hardee, you will find a verdict for the defendant.''

These instructions correctly announce the law, and
their refusal was manifestly reversible error. Authori-
ties *supra.* See, also *Nazum* v. *Pittsburg, etc. R. Co.,* 50
Ind. 141, *infra; Wells* v. *Railroad Co.,* 67 Miss. 24; *Rod-
gers* v. *Railroad Co.,* 80 Miss. 200.

At the request of appellee, the Court granted the fol-
lowing instructions: Instructions given for plaintiff.

"The court instructs the jury that if they believe from
the evidence that plaintiff bought a ticket at Duncan,
Mississippi, on the 9th day of January, 1913, entitling
him to transportation to Hardee, Mississippi, a short
while before the arrival of one of defendant's passenger
trains, going from Duncan to Hardee, and that plaintiff
thereupon took passage on the said passenger train of the
defendant Company, en route to Hardee, his destination,
and that after leaving Rolling Fork, a station on defend-
ant's line of railroad, the agents, servants and employees
of said defendant company, forcibly ejected plaintiff
from said train at midnight, at a point which was not a
station on the line of said defendant's railroad, and be-
fore he reached his destination aforesaid, then they will
find for the plaintiff and assess his damages'' etc.

Note this instruction does not require the jury to be-
lieve that appellee boarded this train at the inducement
of appellant's servants, or that he was not told before

the train reached Rolling Fork that he would have to transfer at that point—nor, for that matter, even that he was ignorant of the train's schedule.

Railroad companies are permitted to establish depots, and arrange their schedules for the safe and proper management of their trains, and a passenger has no right to travel to his destination on any and all trains, merely because he holds a ticket to that place. *Wells* v. *Railroad Co.*, 67 Miss. 24; *Rodgers* v. *Railroad Co.*, 80 Miss. 200; Authorities *supra*.

The proposition announced in this instruction seems to be that appellee was sold a ticket to Hardee "a short while before the arrival of one of appellant's passenger trains. going from Duncan to Hardee," this amounting to a special contract to carry appellee to his destination on that train. This identical instruction was condemned in *Nazum* v. *Pittsburg, etc. R. Co.*, 50 Ind. 141, 19 Am. Rep. 703, one of the leading American authorities on the question involved in this case. There, as here, plaintiff, shortly after purchasing his ticket, boarded a train which had just arrived, and was not scheduled to stop at his destination.

At the request of appellee, the court instructed the jury as follows: "If the jury find that plaintiff purchased a ticket for Sweetser, and that the train which he entered was the first train due after the purchase, he had a right to enter that train unless he was informed that the train would not stop at Sweetser before he entered the train."

"We think this instruction was wrong. It amounted to saying to the jury that, notwithstanding that appellant ran two daily trains which stopped at Sweetser, yet, if the train upon which he (appellee) took passage was the first train due at Union City (point of departure) after he purchased his ticket, the appellant was bound to have it stopped at Sweetser to allow the appellee to get off, although, by the regulations of appellant, that train was not allowed to stop at that station. But under such circumstances the appellant was not bound to stop this train

at Sweetser  .  .  .  It was the duty of the appellee to inform himself when, where and how he could go and stop according to the regulations of appellant's trains, and if he made a mistake which was not induced by the appellant, he has no remedy." See, also, *Railway Co.* v. *Swarthout,* 67 Ind. 567, *supra.*

The following instruction was also secured by appellee: "No. 3. The court instructs the jury that if they find for the plaintiff, that in assessing his damages that they may take into consideration the physical injury, if they believe from the evidence that he suffered such physical injury, and may also take into consideration his present physical pain and suffering and mental pain as result of said physical injury, if they believe from the evidence that he was so injured, and so suffers, and they may also take into consideration such other future suffering both physical and mental, as they may believe from the evidence plaintiff will suffer as a result of the said physical injury, if the jury believe that he will so suffer, and bring in their verdict in such a sum as the jury may think from the evidence he is entitled to, not to exceed," etc.

Plaintiff had no right whatever to this instruction, authorizing the jury to consider his present and future physical pain and mental suffering. Appellee's own physician and witness stated positively that he had examined appellee that day, and all soreness had disappeared.

See record, page 29: "Q. Well have you examined him since; did you examine him today? A. I did; that is I could merely take his word today; the soreness is gone and unless I could make a further examination or use the X ray I would be unable to tell about the condition of the kidneys now."

This court has frequently held that the giving of instructions not justified by the evidence is reversible error, whether such instructions are correct, as abstract statements of the law, or not.

Further, and independently—even if it be considered, *arguendo,* that the conductor had no right to put off the appellee, yet still a case of liability against the railroad was not made out; at least not for any substantial damages.

The illegal (?) act of putting him off was not the proximate cause of the personal injury which is the real gist of his complaint. Such injury could not have been reasonably foreseen as a probable result of his exclusion. There was an intervening pure accident.

The court will observe: Our contention is, not that the appellee is debarred from recovering because of his contributory negligence in falling into the trestle; but that the exclusion from the train was not, in any legal sense the proximate cause of his injury from so falling in. *Lewis* v. *Railroad Co.,* 54 Mich. 55; *Conway* v. *Railroad Co.,* 90 Me. 199; *Lynch* v. *Transit Co.,* 102 Mo. App. 30; *Haley* v. *Transit Co.,* 179 Mo. 30; *Milwaukee R. Co.* v. *Kellogg,* 94 U. S. 469, 475.

*Jas. D. Thames,* for appellee.

We do not think that the questions of law presented in the brief of counsel for appellant will give the court much concern, and we respectfully submit that none of the authorities cited by them are at all in point. On the other hand, we confess that by reason of the fact that this case arose out of and depends upon the peculiar method adopted by appellant for the operation of its trains, it is impossible to find any case squarely in point.

The undisputed evidence shows that under appellant's regulations the train which appellee took was a proper train for him to have taken to go from Duncan to Hardee, but that in order to make this trip it is necessary to leave the train at Rolling Fork at a late hour of the night, and spend the night there, and about eight o'clock the next morning take a south bound local, which is scheduled to stop at Hardee. Hardee is only about twenty miles from

Rolling Fork, and owing to this extraordinary arrangement what would ordinarily be a run of a few hours from Duncan to that place becomes a journey of seventeen or eighteen hours. It is owing to the fact that appellee, who, as I have said, is an ignorant negro, was unfamiliar with this extraordinary and intricate movement of appellant's trains, and that it did not condescend to vouchsafe him any information on the subject, that he received his injuries.

The case was submitted to the jury, which found a verdict for two thousand and five hundred dollars, based upon instructions to which we will hereafter allude and of which appellant here complains.

Aside from the very technical and faintly urged objections to these instructions, appellant bases its whole case upon the proposition that it was the duty of the appellee to inform himself fully of all of the details concerning the movement of appellant's trains, and that he should at his peril have known that he must change cars at Rolling Fork, and should have, without warning or suggestion on the part of its servants, in pursuance of such information, made this change.

Many cases are cited from other states, in which the general principle is announced that it is the duty of intending passengers to ascertain the proper trains for them to take, and whether or not they stop at the desired points of debarkation. I submit, however, that these broad principles have no application to the peculiar facts of the case at bar. In the first place, there can be no doubt that when appellee bought his ticket at Duncan the agent knew that he intended to take the train he did for Hardee, although it did not stop at that point, and that he gave no information on this subject. This testimony is undisputed. It is not a question, therefore, of appellee's having taken the wrong train. He took the train intended to transport passengers from Duncan to Hardee, and he did so with the full knowledge of the agent who sold him the ticket.

In the case at bar there was an invitation to the public generally and to appellee to use the particular train in question in order to be transported to Hardee and other points at which it was not scheduled to stop. I unhesitatingly assert that no further duty rested upon appellee or any other intending passenger than to ascertain which was the proper train for him to take to be carried to his destination, and that having done this the duty then devolved upon the railroad company to inform him of any exceptional regulations or conditions imposed by them which should require him to change trains and spend the night on the way.

When, therefore, appellant invited appellee to take the train he did to be transported to Hardee, and when its agent sold him a ticket to that point with full knowledge of the fact that he had accepted appellant's invitation, and did not tell him that the train upon which he thus embarked would not in fact stop at Hardee, although it accepted passengers destined for that point, by his very silence he entered into a special contract with appellee to transport him to his place of destination by a through and continuous passage, and not to change a run of a few hours into a lengthy journey, and impose upon him the expense, annoyance and delay of spending the night enroute.

However this may be, I submit with even greater confidence that when appellee presented his ticket to the conductor and he punched and returned it to him and accepted him as a passenger bound for Hardee without any statement or explanation that the train did not stop at that point, his conduct constituted a representation that he would be transported there in the usual manner. Furthermore, according to appellee's testimony, the conductor, although he knew that at the railroad company's invitation he had entered a train intended to transport passengers to Hardee, and although he further knew that under the rules and regulations of his employer the train was not scheduled to stop there, but that passengers

for that point must spend the night in Rolling Fork, still neglected to notify this ignorant man of that fact, and after passing Rolling Fork put him off in the woods at midnight, in a dangerous place, because he was not familiar with the intricate details of the railroad company's train operations.

Counsel say in their brief that the railroad company was under no duty to volunteer any information as to the movement of its trains, but that its passengers must inform themselves of all these things at their peril. I confidently submit that when the conductor accepted appellee's ticket for Hardee without comment and permitted him to go by Rolling Fork without notifying him that he must change cars there, he as the agent of the railroad company again entered into a special contract entitling appellee to be transported to and be put off at Hardee.

In none of the cases cited by counsel for appellant did any such condition of affairs exist.

Smith, C. J., delivered the opinion of the court.

(After stating the facts as above). One of the assignments of error is that the court below erred in not granting appellant's request for a peremptory instruction. A railroad company has the right to so arrange its schedules that some of its trains will not stop at all of its stations, and in the absence of a special contract to the contrary is ordinarily under no obligation to stop its train and discharge a passenger at a station at which the train is not regularly scheduled to stop. *Wells* v. *Railroad Co.*, 67 Miss. 24, 6 So. 737.

It is also true, as stated by counsel for appellant, that the holder of a railway ticket should inquire before embarking upon a train whether it will stop at the place to which he has purchased his ticket. Nevertheless, the servants of a railroad company are not relieved of all duty in this connection toward a passenger who has mis-

takenly embarked upon a train not scheduled to stop at the place to which he has purchased a ticket. They should inform him of that fact upon their discovery thereof, so that he may disembark at a regular stop, if any, before reaching his destination and continue his journey on another train. *Plott* v. *Railroad Co.,* 63 Wis. 514, 23 N. W. 412.

If the employees of the company negligently fail to discharge this duty to such a passenger, they have not the right thereafter to deal with him in such manner as to impose undue inconveniance and discomfort upon him in reaching his destination. It may be that their duty towards him in this connection depends upon the circumstances of each particular case. This, however, we are not now called upon to determine, for they clearly have not the right to eject him from the train between stations, on a dark and rainy night, at a place with which he is not familiar, as was done in the case at bar according to the testimony of appellee.

Moreover, conceding for the sake of the argument that appellee forfeited his right to travel on appellant's train when he declined to pay the fare from Hardee to Vicksburg, its servants had the right to eject him from the train only at a place where he would be reasonably safe from injury. In ejecting a trespasser from a train, a railroad company is not required to consider his mere convenience, but reasonable care must be taken not to expose him to danger of being injured. 2 Moore on Carriers (2d Ed.) 1427; *Railroad Co.* v. *Gants,* 38 Kan. 608, 17 Pac. 54, 5 Am. St. Rep. 780. Whether or not this duty was discharged is ordinarily a question for the jury.

What has been hereinbefore said disposes of the assignments of error predicated upon the refusal by the court below of appellant's second and third instructions.

The error complained of, if error in fact there is, in appellee's first instruction, was, under the foregoing views, cured by the granting of appellant's fifth instruction.

In view of the testimony that appellee's injury is permanent, we cannot say that the verdict was excessive.

We find no reversible error in the other matters complained of.

*Affirmed.*

STEVENS, J. (dissenting). I find myself unable to agree with the majority holding. My Brethern concede that a passenger "should inquire before embarking upon a train whether it will stop at a place to which he has purchased his ticket," yet they say:

"The servants of a railroad company are not relieved of all duty in this connection toward a passenger who has mistakenly embarked upon a train not scheduled to stop at the place to which he has purchased a ticket. They should inform him of that fact upon the discovery thereof."

Appellee in his own testimony says that when he purchased the ticket "there wasn't any conversation at all" with the ticket agent, or with any other agent or employee of the railroad company, at Duncan, where he boarded the train. The ticket itself gave appellee notice that it was good "on train scheduled to stop at destination." Appellee says he can read and write. The conductor simply punched his ticket and gave it back to appellee, who had, according to his own testimony, no conversation with the conductor whatever. Appellee was therefore not misled by any statement by or information derived from the conductor. This, therefore, is not a case where the passenger has been at all misled by any information given by the servants or employees of the railroad company, or by any well-known custom of the company. Admitting as true all the testimony on behalf of the plaintiff, a case is presented where the passenger embarked upon a fast train which he thought would stop at his destination, but which, in fact, by the undisputed testimony did not stop at this little station.

It appears to be conceded by appellant that the ticket
in question would entitle appellee to ride on the fast train
as far as Rolling Fork, the first stop before reaching
Hardee, but that by the terms of the contract of carriage
the passenger must there "transfer to local train." In-
deed, this is the contract as shown on the face of the
ticket. Under this contract there could be no criticism of
the conductor for simply punching the ticket and hand-
ing it back to the passenger. The natural presumption
from this act of the conductor is that the conductor recog-
nized the right of appellee to transportation as far as
Rolling Fork; and he returned the punched ticket to ap-
pellee in order that the latter might later use it on the
local train. The passenger in this case did not, accord-
ing to his statement, inform the conductor that he ex-
pected to remain on the fast train the entire journey.
The conductor, therefore, was certainly not called upon
to volunteer any information. I do not understand how
the passenger could be under the duty of inquiring and
knowing his destination, and whether the train upon
which he seeks passage, under the rules and regulations
of the railroad company, stops at such destination, and
at the same time a similar duty should rest upon the
servants of the railroad company to ascertain whether
the passenger knows what he is about and understands
his duty in the premises. In other words, the duty
could not rest upon both; if so, the railroad company
would be under obligation to detail a guardian for many
passengers.

Our own court is fully committed to the holding that
railroad companies "are permitted to establish their
own depots, or stations, and to arrange their own sche-
dules for the safe and proper movement and management
of their trains," and that "to allow the caprice, or the
wish, or even the seeming necessity, of an individual to
procure stoppages of trains at unaccustomed points, and
to disarrange the schedule fixed for their predetermined
and regular movement, would be to permit, not only vast

property interests, but human lives, as well, to be certainly and recklessly put in peril." *Wells* v. *A. G. S. R. R. Co.*, 67 Miss. 24, 6 So. 737. The passenger "must ascertain the train in which he is to go, . . . its stopping stations, his right to get off and get on, to resume his trips," etc. *Dietrich* v. *Penn. R. Co.*, 71 Pa. 432, 10 Am. Rep. 711.

"It is the duty of a person, about to take passage on a railroad train, to inform himself when, where, and how he can go, or stop, according to the regulations of the . . . company." *Atchison, etc., R. Co.* v. *Gants,* 38 Kan. 608, 17 Pac. 54, 5 Am. St. Rep. 780; *Railroad Co.* v. *Swarthout,* 67 Ind. 567, 33 Am. Rep. 104; *McRae* v. *Railroad Co.,* 88 N. C. 526, 43 Am. Rep. 745; *Schiffler* v. *Railway Co.,* 96 Wis. 141, 71 N. W. 97, 65 Am. St. Rep. 35, and note; *Johnson* v. *Railroad,* 46 N. H. 213, 88 Am. Dec. 199; *Railroad Co.* v. *Bartram,* 11 Ohio St. 457; *Beauchamp* v. *Railroad,* 56 Tex. 239; *Carter* v. *Railway Co.,* 75 S. C. 355, 55 S. E. 771; *Duling* v. *Railroad Co.,* 66 Md. 120, 6 Atl. 592; *Logan* v. *Railroad Co.,* 77 Mo. 663; *Plott* v. *Railway Co.,* 63 Wis. 511, 23 N. W. 412; *Railroad Co.* v. *Miles,* 100 Ky. 84, 37 S. W. 486; *Railroad Co.* v. *Bell,* 39 Tex. Civ. App. 412, 87 S. W. 730; *Scott* v. *Railway Co.,* 144 Ind. 125, 43 N. E. 133, 32 L. R. A. 154; *Railway Co.* v. *Lightcap,* 7 Ind. App. 249, 34 N. E. 243.

"When a person purchases a ticket, he should ascertain whether the train will only stop at the principal stations, or at all of them, before he gets on a passenger train; and were he to get on one which was not accustomed to stop at the station to which he desired to go, he would not, without an agreement to stop, have any right to insist upon the company's changing the course of their business for his accommodation. The requisite information can always be had from the agent when the ticket is purchased, and it is but reasonable to require passengers to obtain the information and to act upon it." *Chicago, etc., R. Co.* v. *Randolph,* 53 Ill. 510, 5 Am. Rep. 60.

This doctrine is fully recognized in the case of *Rail-
road Co.* v. *Rodgers,* 80 Miss. 200, 31 So. 581. As to this
the decisions are practically in accord.

In the instant case, therefore, appellee was not by his
contract of carriage entitled to passage on this limited
train from Rolling Fork to Hardee, and having declined
or being unable to pay his fare from Rolling Fork to the
next regular stopping place of said train, the conductor
had the right, properly exercised, to eject appellee at
any reasonably safe place beyond Rolling Fork. Ap-
pellee had the right to the better accommodations pro-
vided by this fast train as far as Rolling Fork; and to
that point, he was not, in any sense of the word, upon the
wrong train. And in the absence of anything to indicate
that the passenger had failed to inform himself, the con-
ductor was not called upon to assume that appellee was
ignorant of the schedule and movements of this particu-
lar train. I cannot, therefore, concur in the holding of
the majority that the servants of the railroad company
in this instance were called upon to volunteer to appellee
any information whatever until after the train left Rol-
ling Fork Railroad Companies, especially those doing
an interstate business, are called upon to provide limit-
ed trains making few stops, to transport in the short-
est possible time the United States mails and express, as
well as passengers; and this is a question in which the
public is more vitally interested than railroad companies.
It would be an easy matter for any passenger to feign
ignorance of a fast train schedule, and by remaining
upon such a train force it to stop at any flag stop or
small station, and thereby completely disorganize and
plunge into reckless and dangerous chaos the movements
and schedules of all important railroads.

"If it is understood by the public that the duty is on
the traveler to inquire as to all such reasonable regu-
lations as it may be important for him to know, we think
there will result less inconvenience than from any hold-
ing of the law that tends to relieve the traveler from the

duty of inquiry as to a part of such matters of regulation." *Johnson* v. *Railroad Co., supra.*

It cannot be contended that the mere taking up of a ticket in this case constituted a special agreement.

"Should a person get on such a train, without the consent of the employees of the road, the taking up of his ticket merely, without an agreement to stop at the desired station, would not amount to an undertaking by the company to put him off at that place." *C. & A. R. R. Co.* v. *Randolph, supra.*

This contention was made in the case of *Wells* v. *A. G. S. R. R. Co., supra,* where the passenger paid fare to the conductor, and where a stronger case was presented for such holding than is here presented by the mere punching of appellee's ticket and returning it to him without comment.

The case of *Plott* v. *C. & N. W. R. R. Co.,* 63 Wis. 511, 23 N. W. 412, is cited by my Brethern as authority that a duty rests upon the servants of a railroad company to inform the passenger of the fact that the train does not stop at the place to which he has purchased a ticket. I do not think the facts in the Plott Case call for any such holding by the court. The facts in that case were that an officer of the railroad company did in fact notify the passenger at and before she left the junction of Elroy; and upon such information the passenger left the train at said junction before reaching her destination. All the court intended to say, therefore, on this subject, was that the railroad company had fully discharged its duty to the passenger; and the same opinion states:

"It is also held that it is the duty of the passenger to ascertain for himself whether the train upon which he takes passage will carry him and put him off at the destination to which he wishes to be carried," and "in order to entitle the plaintiff to recover damages in this action, it was incumbent on her to prove that she had either by express contract with some employee or agent of the companies, authorized to make the same, or ac-

110 Miss.—18.

cording to the rules and regulations of the companies, the right to be carried from St. Paul to Wonewoc on the same train on which she took passage at St. Paul. This, we think, she failed to prove upon the trial. The jury have found that the train on which she took passage did not ordinarily stop at Wonewoc, and the proof given on the trial that it had before that time occasionally stopped there to permit passengers to leave the cars there did not estop the company from running its train in the ordinary way, and make it its duty to stop on this occasion.''

This case clearly placed the duty upon the passenger to inform himself, and fully sustains the views I have just expressed. The only duty resting on the servants of railroad companies in this connection is negative—not by any information actually given to mislead the passengers.

I do not take issue, however, with the majority holding that appellee could only be ejected at a place that would be reasonably safe. This theory of the case justified the refusal of instructions 2 and 3, asked by appellant, but, in my judgment, rendered inapplicable and erroneous instruction No. 1, given for the plaintiff, as follows:

''The court instructs the jury, that if they believe from the evidence that plaintiff bought a ticket at Duncan, Miss., on the 9th day of January, 1913, entitling him to transportation to Hardee, Miss., a short while before the arrival of one of defendant's trains, going from Duncan to Hardee, and that plaintiff thereupon took passage on the said passenger train of the defendant company, enroute to Hardee, his destination, and that after leaving Rolling Fork, a station on defendant's line of railroad, the agents, servants, and employees of said defendant company forcibly ejected plaintiff from said train at midnight, at a point which was not a station on the line of said defendant's railroad, and before he reached his des-

·tination aforesaid, then they will find for the plaintiff and assess his damages,'' etc.

This instruction does not squarely present this issue just mentioned, but seems to rely upon the absolute right of appellee to be transported to his destination. The granting of this instruction is, in my judgment, reversible error. I think the cause should 'be reversed and re-manded for a new trial on the issue as stated in the case ·of *Jackson* v. *Railroad Company,* 76 Miss. 703, 25 So. :353:

''Whether, at the time and place and under the circumstances, the right of ejection in this instance was properly exercised.''